[Civ. No. 2966. Third Appellate District.—December 14, 1925.]

## MATTIE J. SPALDING, Appellant, v. JOHN B. SPALDING et al., Respondents.

[1] JUDGMENTS—HUSBAND AND WIFE—DIVORCE—DISPOSITION OF REAL PROPERTY—FRAUD—EVIDENCE.—In this action by a divorced wife against her husband and his parents to compel the conveyance to her of certain real property awarded to her by a judgment of divorce rendered in a sister state, certain letters passing between the husband and his parents which were introduced in evidence were sufficient to show that the parents participated in the son's fraudulent scheme to defraud the plaintiff of her rights under said judgment and that the parents held the property either in trust for their son or pursuant to an agreement and understanding, based upon a sufficient consideration, that they were to have a mere life estate therein and that the whole thereof was to pass to the son upon their deaths.

[2] ID.—EVIDENCE—STATUTE OF FRAUDS—TRUSTS.—In such action, the letters passing between the son and his parents were a sufficient declaration of trust in the property, if the property was held in trust, and were sufficient to satisfy the statute of frauds if the parents held the property under an oral agreement that it was to be transferred to the son upon their death.

[3] ID. — DECREE OF FOREIGN COURT — EFFECT ON TITLE TO LAND — BASIS FOR ACTION.—In such action, while the decree of the court

2. See 12 Cal. Jur. 902; 26 R. C. L. 1198.
3. See 15 Cal. Jur. 240, and Supplement.

of the sister state directing the conveyance of the property to the wife did not of itself affect the title to the land in this state, it is a sufficient basis for an action in the courts of this state to compel such conveyance.

[4] ID.—FRAUDULENT CONVEYANCES—TITLE.—In such action, if the parents conveyed the property to the son for a valuable considera‑ tion, as alleged in the complaint, the whole title to the property therein became vested in him and the parents acquired no interest therein by the subsequent fraudulent conveyance to them, and the judgment should have awarded the plaintiff the whole property.

[5] ID. — PLEADING — AMENDMENTS — EVIDENCE. — In such action, the trial court should have permitted the plaintiff to amend her complaint to conform to the proof that the husband's parents had agreed to vest the title to the property in him upon their deaths, where certain statements contained in letters written by the parents to their son were sufficient to support the allegations of the pro‑ posed amendments.

[6] ID.—PLEADING—ADMISSIONS—EVIDENCE.—In such action, where the complaint alleged that the defendant husband delivered to his parents large sums of money for the purchase and improvement of the property, the allegations in the answer that said sums of money constituted gifts from said defendant to his parents to be used by them as they saw fit did not constitute an admission that said defendant furnished all the money used in purchasing and improving the property.

[7] ID.—DEFICIENCY JUDGMENT.—In such action, where plaintiff was given judgment for only an undivided one-half of the real prop‑ erty and the court of the sister state had awarded her a money judgment and ordered her husband to convey the whole property to her in full satisfaction thereof, she was entitled to a deficiency judgment for the difference between the amount of the foreign judgment and the value of such undivided half of the property.

[8] ID.—EQUITY—ADJUSTMENT OF RIGHTS.—It is the duty of a court of equity, when all the parties to a controversy are before it, to adjust the rights of all and leave nothing open for further liti‑ gation.

---

(1) 19 C. J., p. 320, n. 37. (2) 27 C. J., p. 260, n. 55; 39 Cyc., p. 57, n. 21. (3) 34 C. J., p. 1106, n. 96 New. (4) 19 C. J., p. 320, n. 28 New. (5) 19 C. J., p. 320, n. 23. (6) 19 C. J., p. 320, n. 23. (7) 19 C. J., p. 320, n. 28 New. (8) 21 C. J., p. 134, n. 5.

4. See 12 Cal. Jur. 978; 12 R. C. L. 500.
5. See 21 Cal. Jur. 207.
8. See 10 Cal. Jur. 496; 10 R. C. L. 370.

APPEAL from a judgment of the. Superior Court of Stanislaus County. L. W. Fulkerth, Judge. Reversed.

The facts are stated in the opinion of the court.

Orville R. Seiter and Francis ·O. Hoover for Appellant.

A. J. Carlson and W. C. Cook for Respondents.

FINCH, P. J.—This action was commenced by the plaintiff against defendant John B. Spalding and his parents, T. B. Spalding and Dora M. Spalding. Both of the parents died prior to the entry of judgment and their executors were substituted as parties defendant. The pleadings, findings, and judgment cover 288· pages of the printed transcript. A general statement of the case will be taken from the findings and only such parts of the pleadings will be set out as are necessary to an intelligible discussion of the questions raised by the appeal.

The court found that plaintiff was married to defendant John B. Spalding, December 25, 1894; that the issue of the marriage is one child, a daughter; that June 3, 1904, plaintiff filed in the circuit court of Kenosha County, Wisconsin, her petition for a divorce from said defendant; that he was personally served with process in the action and appeared therein in person and by attorney; that judgment therein was entered July 12, 1904, granting plaintiff a divorce and requiring said defendant to pay plaintiff certain sums as alimony and for the maintenance of the child of the parties; that the judgment for alimony and maintenance was modified from time to time by said circuit court; that on the sixteenth day of December, 1918, the plaintiff filed her petition in said court and cause praying for a division of the property of said defendant; that said defendant "entered his general appearance in said cause and by his attorneys filed an answer to the merits of plaintiff's said petition"; that a trial of the issues raised by said petition and answer was had and said circuit court entered judgment and decree ordering said defendant forthwith to pay plaintiff the aggregate sum of $30,016.60 and in full satisfaction thereof, "within five days from the date of said judgment and decree to

execute, acknowledge, and deliver to plaintiff, Mattie J. Spalding, a valid conveyance under the laws of the state of California . . . of and to the hereinafter described real estate''; that said defendant has not paid any part of the judgment or executed said conveyance; that said judgment and decree has not been ''set aside nor reversed on appeal nor amended nor modified.'' The real estate referred to consists of 53.9 acres of land in the county of Stanislaus, state of California, standing of record in the names of T. B. Spalding and Dora M. Spalding. The court in this case further found:

''That defendant, John B. Spalding, on or about September 1, 1906, conceived the fraudulent scheme and intention of hindering, delaying and defrauding plaintiff of all rights, demands, claims and causes of action accruing and to accrue to plaintiff against said defendant, John B. Spalding, under said judgment of July 12, 1904, entered by said Circuit Court of Kenosha County, Wisconsin, and such amendments as might subsequently be made thereto; and in pursuance of said fraudulent scheme, intent and purpose, and with the actual knowledge of and participation therein by defendants, T. B. Spalding and Dora M. Spalding, parents of defendant, John B. Spalding, defendant John B. Spalding, between May 1st, 1909, and July 1st, 1915, and while defendant John B. Spalding was insolvent, and without consideration, transferred and delivered to the defendants, T. B. Spalding and Dora M. Spalding, large sums of money, to wit: thousands of dollars, which said moneys were transferred and delivered as aforesaid, to be used, and which were used, in the part payment of the purchase price of certain hereinafter described real estate, and for the payment of certain hereinafter mentioned mortgage notes evidencing money borrowed and used in the payment of part of the purchase price of the said property, and for improvements thereon; . . . that the total amount of money so expended by and through the said T. B. Spalding and Dora M. Spalding for the purchase of the said property and for improvements thereon as hereinabove set forth, was fifteen thousand (15,000) dollars; and that the total amount of money given, transferred and delivered to T. B. Spalding and Dora M. Spalding by the defendant John B. Spalding in pursuance of said fraudulent

scheme, intent and purpose of defrauding plaintiff, Mattie J. Spalding, as aforesaid, and with the knowledge of and participation therein by defendants T. B. Spalding and Dora M. Spalding, as hereinabove set forth, and in the manner hereinbefore stated in this paragraph, was the sum of seven thousand five hundred (7,500) dollars; and that the said seven thousand five hundred (7,500) dollars so paid, transferred and delivered by the said John B. Spalding to the said T. B. Spalding and Dora M. Spalding, in the manner and for the purposes hereinabove set forth, constituted and amounted to one-half of the total amount of money so expended by and through the said T. B. Spalding and Dora M. Spalding for the purchase of the said real property and the improvement thereon as hereabove set forth''; that the present value of said real estate is $26,000; ''That on the 20th day of May, 1917, defendants T. B. Spalding and Dora M. Spalding, executed and delivered their deed of grant, bargain and sale, under seal, for a recited money consideration, conveying said real estate to the defendant, John B. Spalding. And that thereafter on the 20th day of May, 1917, defendant, John B. Spalding, in the furtherance of his fraudulent scheme, intention and purpose to defraud the plaintiff, Mattie J. Spalding, as aforesaid, and with the actual knowledge and acquiescence thereof and participation therein by defendants T. B. Spalding and Dora M. Spalding, executed and delivered his deed of grant, bargain and sale, attempting to convey said real estate to the defendants, T. B. Spalding and Dora M. Spalding in joint tenancy; that said deed of John B. Spalding was executed and delivered without consideration therefor and while defendant John B. Spalding, was insolvent. That at all times from September 1, 1906, to the date hereof, defendant John B. Spalding in pursuance of his fraudulent scheme, intention and purpose to defraud plaintiff, Mattie J. Spalding, as aforesaid, and with the knowledge and acquiescence thereof and participation therein by T. B. Spalding and Dora M. Spalding, has secreted and concealed, and is now secreting and concealing the title to all of said defendants' property by having the legal title to same taken and stand in the name or names of a third person or persons, with the result thereof, that

during all of said time, and particularly during the time said real property was being purchased, as aforesaid, and on May 20, 1917, and at the date thereof, none of the property of defendant John B. Spalding was or is subject to legal process and, by reason thereof, John B. Spalding was and is insolvent. That at all times from July 12, 1904, to the date hereof, plaintiff was and is an existing creditor of the defendant, John B. Spalding. That said defendant has no property or assets of any kind within the State of Wisconsin or the State of California, or elsewhere, other than the said real property''; that neither T. B. Spalding nor Dora M. Spalding at any time ''made, executed, published, declared, or delivered in writing any declaration in substance or in effect that they or either of them were holding the legal title in the said real property or any part thereof for the use or benefit of the defendant John B. Spalding subject to a life interest in the favor of T. B. Spalding and Dora M. Spalding or either of them; . . . and that neither the said T. B. Spalding nor Dora M. Spalding in any manner accepted any express trust as last above referred to; and that the equitable beneficial title or right to the said real property has not, nor has any equitable beneficial title or right to any part thereof become vested in the defendant John B. Spalding by reason of any alleged express trust as last hereinabove referred to; and that all the rights of the said John B. Spalding and of the plaintiff herein in and to the said real property arise out of the matters and things hereinabove stated other than said alleged express trust''; and that said judgment of said circuit court ''was at the time of the trial of this action and is a valid, subsisting and final judgment in all respects.'' Judgment was entered on the findings, adjudging that defendant Elizabeth Blanche Spalding, as successor in interest of Dora M. Spalding, is the owner of an undivided half of said real property and that defendant John B. Spalding is the owner of an undivided half thereof and directing the latter to convey his interest therein to plaintiff in accordance with the provisions of the Wisconsin judgment. Plaintiff has appealed from the judgment in so far as it adjudges Elizabeth Blanche Spalding to be the owner of a half interest in the property and fails to

adjudge that John B. Spalding is the owner of the whole thereof and to direct that he convey the whole thereof to plaintiff, and also in so far as it fails to direct the entry of a deficiency judgment in favor of plaintiff against John B. Spalding.

T. B. and Dora M. Spalding were residing in the state of Illinois in the year 1907 and prior thereto. During that year T. B. Spalding went to Mexico and later in that year his wife joined him there. From Mexico they removed to Victoria, British Columbia, and later to California, where, November 8, 1909, they entered into an agreement to purchase the land involved in this action for the sum of $5,309. The sum of $1,000 was paid upon the purchase price at the time of the execution of the contract and the remainder was to be paid in three equal installments, payable two, three, and four years, respectively, after the date of the agreement. An expensive dwelling-house and other valuable improvements were placed upon the land during the succeeding years and on March 7, 1915, T. B. Spalding wrote the defendant John B. Spalding that "the ranch has all been paid for, the debt is all wiped out."

Dora M. Spalding testified that she and her husband paid for the land with their own money; that they had about $9,000 when they came to California; that she carried $6,500 in "large bills" in a belt around her waist; that defendant John B. Spalding sent his parents money "the same as the other children did. He never sent it expecting to ever get it back, and there was no account made of it, and never gave him anything to show that he had given him (T. B. Spalding) money, and it was put in the main lot of money that we had, and there was no thought we would ever have to account for what he gave him nor how much. . . . We have never made any profit to amount to anything; nothing like the land—that much land ought to pay. We have made something, but that was very little." Robert B. Spalding, a son of the last-named witness, testified that shortly before the purchase of the land he saw at least $5,000 in the possession of his parents and that he made his father a gift of $500 in 1911 and $1,000 in 1912. Defendant John B. Spalding testified in substance that he had owned no property subject to execu-

tion, in his own name, since the year 1908, except an automobile; that "there was no understanding between himself and his father and mother . . . that the property at Turlock was being purchased for him or that he should ever have any greater interest in the same than the other children; that from 1908 to 1916 he practiced medicine at Kenosha, Wisconsin; that he had a large and lucrative practice; that he sent from time to time sums of money to his parents . . . in California; that he did not keep any record of the money he sent to his parents; . . . that since his parents left Decatur, Illinois, they had been in need of financial assistance, and he had continuously from 1908 up until the time of the trial, contributed to their support"; that he could not approximate the amount of money he had sent them; that he sent them $500 in 1910 "hardly any" in 1911, and that "purely as a guess" he would say that he sent them $1,500 in 1912 and $1,500 in 1913. There is undisputed testimony to the effect that, after the judgment of divorce was granted, defendant John B. Spalding stated that he would never own any property in his own name, that he would put his property in his parents' names, and that in the year 1916 he stated to the daughter of himself and plaintiff, "I have been making a good deal of money and I have put it in some property out west; my parents are living there. . . . It will be your home some day." From numerous letters admitted in evidence, written to defendant John B. Spalding by his parents, it appears that he sent them, in round numbers, $3,600 in 1912, $3,100 in 1913, $1,000 in 1914, and $300 in 1915. He admitted having sent them $500 in 1910. There are no letters covering the years 1910 and 1911, and he testified that he sent them "hardly any" money in 1911. He and his parents seem to have written each other frequently, but only the letters of the parents appear in the record. These letters cover nearly three hundred pages of the transcript and only the most material parts thereof will be quoted.

The father wrote the son, at the times indicated, as follows: February 10, 1909: "We rely on your ability to manage our affairs as we are helpless to do it." January 20, 1912: "I need not assure you that we turn to you as the sunflower turns to the sun. Your health and happi-

ness and prosperity are our bounty and blessing. The deep divine love and obligation I feel inspire me with an energetic ambition to build here a home that will be a haven and home and bounteous support and solace for you and yours as soon as possible. . . . I am shaping everything for your future convenience and comfort—because our age and enfeebled health admonish us that the end is but a few years ahead. . . . The development of this place is my remaining life work, and I am all the time distressed by the consciousness that the load you are compelled to carry across the thin ice may result in all our ruin." February 23, 1912: "As soon as debt is paid must inclose tank. . . . The yard is neglected from not being piped. . . . These two necessary things you have ordered done frequently but we could not spare money from other pressing necessities. . . . It is our purpose to develop it (the property in controversy) and hold it as your country seat after we shall pass away." April 17, 1912: "Mattie's letter amuses me. . . . Don't answer her letters nor let her know anything about you or yours. If she knew about this place and this beautiful house and ranch, she would try to make you trouble." August 12, 1912: "I shall be very economical in the expenditure of every dollar you remit." October 20, 1912: "I deeply feel your amazing nobility and goodness to us, and when, in a very short time we shall be laid to eternal rest we hope to have reared in the beautiful home a monument that will doubly endear us to your memory." October 23, 1912: "As soon as all hay is removed will give you an itemized statement of everything. . . . You make suggestions about banking and keeping stub records. Why, don't you think all that is alphabet to me? I can trace by my bank books every dollar since I left Mexico. . . . Be careful of your health—for you and I must not lie down till we get things established." November 5, 1912: "Your interest here is sacred and will be safeguarded by any legal instrument you dictate. . . . You certainly merit solace and sympathy and you can trust us for all both imply and everything material besides that we possess." November 25, 1912: "I wrote you a few days ago advising first the purchase of cows and sows, but since the rec't of this reinforcement I have decided to go to Modesto

tomorrow and pay $500 on the mortgage.'' Undated letter: ''We haven't spent a dollar from the proceeds of the place, but applied all on the place and all we have and could get, and four years of unremitting menial toil with never a dollar we could call our own, and now your letter criticizes and condemns because we don't buy cows with an occasional remittance of $25. . . . I never had and will never submit to a nagging boss. If you don't want to furnish money for this place—don't want to stock it so something can be derived from it, then don't do it. I would vastly prefer death to perpetual servitude. I can get me a salaried position that will be an infinite relief to me both physically and financially. You can have my job whenever you want it.'' March 23, ——: ''Will give you acct of everything in full in a few days. . . . Your dream about Bob and Myrtle, like all dreams, may be taken by reverse. . . . They know the place is to pass to you and that fact is settled and will never be questioned. Mom is as loyal to you and your interest as I am, and both of us are too honorable and grateful to you to entertain any other thought than the one that has been settled and always since existed. When you come out we will execute instruments in writing—which I have always insisted as the proper and more business-like way to transact important business. . . . I want to live long enough to see you comfortably fixed raising hens, hogs, hay and dairy products.'' March 7, 1915: ''There isn't one man in one hundred, if indeed any other besides yourself, so handicapped as you, who could have carved out of an overburdened profession the surplus thousands you have saved and sent out and invested here in this place. . . . I shall within a few weeks execute a deed or document defining our mutual status and understanding conveying to yourself and heirs this ranch after the death of myself and wife. It should have been done a long time ago.'' T. B. Spalding rendered to John B. Spalding frequent itemized accounts of expenditures made upon the place and apparently followed the latter's directions relative to the improvement and management thereof.

In undated letters to defendant John B. Spalding, but evidently written during the period of time covered by the foregoing letters, Dora M. Spalding stated: ''I ask

myself many times each day, what we would have done if
it hadn't been for you and what you are doing for us,
and I hope you will feel the time and work that we have
put in on the home will at least pay you back in cents
and dollars if nothing else, if you decide not to live in
it in years to come." "Why haven't you answered my
letter about fixing the bath room up-stairs? Pop (T. B.
Spalding) won't let me have it done without you write
and tell me to have it done. Also about the fence. The
chickens are eating up everything now." "I am sorry
you wrote to Pop the way you did, for it has stirred
him all up, and he didn't sleep all last night and thinks
maybe it would be best to sell the place so you could get
your money out of it, as you don't seem to be satisfied
the way he has been doing and has been working and
doing more than he is able to do. All for what? something
to eat and a place to sleep." "Nothing could provoke me
under any circumstances to use my position to transfer
any part of the place to anybody for any price. I haven't
a relative that would be low and mean enough to coun-
tenance it. All Pop and I have done here from the be-
ginning has been done with a view to your finally owning
and making this your home." In a letter to her daughter,
dated April 13, 1913, Dora M. Spalding stated: "He (John
B. Spalding) certainly has been very noble to put all his
earnings for a home for us in our old age, but I don't
feel that he is losing anything by it as it will be worth
considerable more money when it will be turned over to
him than what he has put in it." There are no letters
from John B. Spalding to his parents in the record and
what he may have written them can only be inferred from
their letters to him.

[1] In the light of the court's finding, based upon
ample evidence, that the parents knowingly participated
in their son's fraudulent scheme to defraud plaintiff of her
rights and claims under the Wisconsin judgment, the fore-
going letters point unerringly to the conclusion that the
parents held the property either in trust for their son or
pursuant to an agreement and understanding, based upon
a sufficient consideration, that they were to have a mere
life estate therein and that the whole thereof was to
pass to the son upon their deaths. [2] If they held the

property in trust for the son, the letters are a sufficient declaration thereof. (*Lynch* v. *Rooney,* 112 Cal. 279 [44 Pac. 565]; *Taber* v. *Bailey,* 22 Cal. App. 617 [135 Pac. 975].) If the parents held the property under an oral agreement that it was to be transferred to the son upon their death, then their letters were sufficient to satisfy the statute of frauds. (12 Cal. Jur. 902–905.) Such a contract may be specifically enforced. (*Barry* v. *Beamer,* 8 Cal. App. 200 [96 Pac. 373].) If the defendant John B. Spalding is the equitable owner of the property it may be subjected to the claims of the defendant. (*Williams* v. *Coleman,* 70 Cal. App. 400 [233 Pac. 397].) **[3]** While the decree of the Wisconsin court directing a conveyance of the property does not of itself affect the title to the land in this state, it is a sufficient basis for an action in the courts of this state to compel such conveyance. (*Redwood Investment Co.* v. *Exley,* 64 Cal. App. 455 [221 Pac. 973].)

The complaint alleges that "on the 20th day of May, 1917, defendants T. B. Spalding and Dora M. Spalding for a good and valuable and adequate consideration, conveyed said real estate to said defendant, John B. Spalding; and that in the furtherance of the fraudulent designs and intentions of the defendant John B. Spalding, as aforesaid, and with the actual knowledge and acquiescence thereof and participation therein by defendants, T. B. Spalding and Dora M. Spalding, as aforesaid, the defendant John B. Spalding on the 20th day of May, 1917, without consideration, conveyed said real estate to the defendants T. B. Spalding and Dora M. Spalding." It was stipulated by the parties that these allegations be deemed denied. John B. Spalding and Dora M. Spalding testified that both of said deeds were executed without consideration and as parts of a single transaction "and for the purpose of creating in T. B. Spalding and Dora M. Spalding a joint tenancy with the right of survivorship in said lands and premises instead of a tenancy in common." The written conveyance from the parents to their son is presumptive evidence of a consideration. The court failed to find upon this issue, but found merely that the deed was executed and delivered "for a recited money consideration." **[4]** If there was a "good and valuable and adequate considera-

tion'' for the conveyance from the parents to the son, as alleged, then the whole title to the property thereby became vested in him and the parents acquired no interest therein by the subsequent fraudulent conveyance to them, and consequently the judgment should have awarded the plaintiff the whole property.

[5] Plaintiff duly moved the court for an order permitting her to amend her complaint, to ''conform to the proofs made at the trial,'' by alleging that ''on or about January, 1909, defendants T. B. Spalding and Dora M. Spalding, orally contracted and agreed with defendant, John B. Spalding, . . . in consideration of defendant, John B. Spalding, furnishing the necessary money to complete the purchase of the hereinbefore described real estate and to make the improvements to be created thereon, . . . the defendants T. B. Spalding and Dora M. Spalding, would execute and deliver to defendant, John B. Spalding, such document or instrument in writing as would vest the fee simple title to all of the hereinbefore described real estate in defendant, John B. Spalding, upon the deaths of defendants, T. B. Spalding and Dora M. Spalding''; that John B. Spalding furnished large sums of money for the alleged purpose; and that, subsequent to said oral agreement and in consideration of the furnishing of said money, T. B. Spalding and Dora M. Spalding ''promised and agreed in writing that the defendants, T. B. Spalding and Dora M. Spalding, would execute such document or instrument in writing as would vest the fee simple title to said real estate in defendant, John B. Spalding, upon the deaths of defendants, T. B. Spalding and Dora M. Spalding.'' The motion was denied by the court. The statements quoted herein from letters written by the parents are amply sufficient to support the allegations of the proposed amendments to the complaint. While the trial court has a wide discretion in granting or refusing leave to file amendments to conform to the proofs, it is deemed that, in view of the necessity of a retrial, it will be in the interest of justice to permit plaintiff to amend her complaint by alleging the facts set forth in the said proposed amendments.

[6] Appellant contends that the answer admits that all the money used in the purchase and improvement of

the property was furnished by John B. Spalding. This contention cannot be upheld. The complaint alleges that John B. Spalding delivered to his parents ''large sums of money, to wit: thousands of dollars'' for the purposes of and which were used by his parents ''in the payment of the purchase price of certain hereinafter described real estate and . . . for improvements thereon and for cultivating and raising crops thereon, . . . and for the general operation and development of such property.'' Clearly this is not an allegation that John B. Spalding furnished all the money which was used for such purposes. The answer denies that John B. Spalding furnished said sums of money for the purposes alleged and alleges ''that said —— sums of money constituted gifts from the defendant, John B. Spalding,'' to his parents ''to be used by them as they saw fit.'' This affirmative allegation in the answer is not an admission that John B. Spalding furnished all the money used for the alleged purposes. For like reasons, appellant's contention that the findings show that John B. Spalding furnished all the money used in purchasing and improving the property is not sustained by the record.

[7] Appellant further contends that since the court found that defendant John B. Spalding was the owner of only an undivided half of the property she should have been given a deficiency judgment for the difference between the amount of the Wisconsin judgment and the value of such undivided half of the property. In her complaint plaintiff, prayed for a judgment to the effect that said defendant was the owner of the property and that he be required to convey the same to her and for ''such other relief as may seem just and equitable.'' Prior to the entry of judgment she was granted ''leave to file brief upon the question of entry of deficiency judgment.'' That question, therefore, was properly before the court for decision. The Wisconsin court found that the value of the property here involved was $30,000 and that ''both the beneficial and equitable title'' thereto was vested in said defendant, and the judgment therein provides:

''First. That defendant, John B. Spalding, forthwith pay to the plaintiff, Mattie J. Spalding, the sum of Twenty-five Thousand Dollars ($25,000.00), as a judgment of

and for final division and distribution of the Estate of said John B. Spalding; that the costs of this proceeding, taxed against defendant, John B. Spalding, in the sum of Sixteen and Sixty One-hundredths ($16.60) Dollars, be paid by defendant to plaintiff forthwith; and that defendant, John B. Spalding, also forthwith pay to plaintiff, Mattie J. Spalding, as suit money in this behalf the sum of Five Thousand ($5,000.00) Dollars, Three Thousand Five Hundred ($3,500.00) Dollars of said amount being for attorney fees and One Thousand Five Hundred ($1,500.00) of said amount being for disbursements; that this order shall have the same force and effect as a judgment at law, and shall vest in plaintiff, Mattie J. Spalding, the vested and unconditional right to have and recover from defendant, John B. Spalding, the aggregate sum of Thirty Thousand Sixteen and Sixty One-hundredths ($30,016.60) Dollars, together with interest thereon at the rate of six (6%) per cent per annum from the date hereof.

"Second. That in full satisfaction of the aggregate sum of money heretofore ordered to be paid by defendant to plaintiff, to-wit: Thirty Thousand Sixteen and Sixty One-hundredths ($30,016.60) Dollars, as and for a judgment for final division and distribution of the Estate of defendant, John B. Spalding, including costs and suit money, defendant, John B. Spalding, shall, within five (5) days from the date hereof, execute, acknowledge and deliver to plaintiff, Mattie J. Spalding, a valid conveyance under the laws of the State of California, in form according to schedule at the foot hereof, of and to the hereinbefore described real estate of defendant, John B. Spalding, situated in the County of Stanislaus, State of California, and that on the default and failure of defendant, John B. Spalding, to execute said conveyance in manner and form as herein provided, execution may issue on this judgment without further order of Court."

It thus appears that plaintiff was given a money judgment for $30,016.60 and interest thereon and that defendant was ordered to convey the property to plaintiff in full satisfaction of the money judgment. If the defendants in this action had succeeded in establishing their allegation that John B. Spalding had no interest in the property he could not have satisfied the money judgment by execut-

ing a mere empty form of conveyance. It seems equally clear that if he is the owner of only an undivided half of the property a conveyance thereof to plaintiff cannot operate as a full satisfaction of such money judgment, but in such case a money judgment in favor of plaintiff should be given. [8] "It is, indeed, the duty of a court of equity, when all the parties to the controversy are before it, to adjust the rights of all and leave nothing open for further litigation." (*Swan* v. *Talbot,* 152 Cal. 142, 147 [17 L. R. A. (N. S.) 1066, 94 Pac. 238] ; *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474 [111 Pac. 360].) If it finally be determined that John B. Spalding is the owner of only an undivided half of the property, then, in addition to a judgment requiring him to convey such undivided half to plaintiff, she will be entitled to a money judgment for the difference between the amount of the Wisconsin judgment and the value of such undivided half of the property as fixed by the Wisconsin court.

The parts of the judgment appealed from are reversed and the trial court is directed to permit the plaintiff to amend her complaint as herein indicated.

Plummer, J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 13, 1926, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 11, 1926.