[Civ. No. 10998. First Appellate District, Division One.—August 20, 1940.]

MAYBELLE MORROW, Respondent, v. GEORGE W. MOR-ROW, Appellant.

John J. Taheny for Appellant.

Joseph G. Gallagher for Respondent.

WARD, J.—An appeal from a judgment ordering that a certain divorce judgment and decree rendered in the State of Nevada be entered as a foreign judgment with the same force and effect as if it had been granted by the Superior Court of the State of California, and that plaintiff herein be given judgment against defendant in the sum of $4,103, together with interest.

Chronologically the facts are as follows: On May 17, 1930, in San Francisco, Maybelle M. Morrow and George W. Morrow, at that time wife and husband, made an agreement for immediate separation whereby the wife obtained certain real and personal property, declared therein to be her separate property, and it was provided that all other property in the possession of, or thereafter acquired by, the husband, should be his sole and separate property. No other provision was made for maintenance or support of the wife, but it was agreed that the contract would not bar her in any future divorce action from claiming support money or alimony; and that the extent of such right should be determined by a court of competent jurisdiction.

In April, 1931, the husband having in the meantime become a *bona fide* resident of the State of Nevada, the same parties agreed in writing upon monthly payments of $75 by the husband for the support and maintenance of the wife, and $25 for their child. The wife waived any greater amount for a period of one year, and the husband agreed to pay any additional amount that should, after such period, be awarded by any court of competent jurisdiction. The agreement refers to the previous property settlement by designation and date and provides: "This agreement shall not modify the hereinbefore mentioned agreement of May 17th, 1930, save and except in the particular hereinabove set forth."

On the date of this second agreement, April 17, 1931, the parties entered into a stipulation, which was filed in a divorce proceeding in Nevada, providing that the custody of their child be given the mother; that $25 a month be paid by the husband for the child's support and maintenance, and that $75 a month be paid to the wife as and for alimony. The husband also agreed to pay the defendant wife's costs and attorney's fee. The wife stipulated that the trial should be had and final judgment entered on motion of the husband without further notice to her.

In the divorce action, heard on the same date, a decree in favor of the husband was granted, which refers to the stipulation on file, also to the property settlement of May 17, 1930, which was approved and adopted as a complete and full settlement of all property rights of the parties. While no mention was made therein of the agreement of April 17, 1931, which was not introduced in evidence, the terms of the decree are in accordance with the property settlement, the subsequent agreement and the stipulation.

The complaint in the present action, filed by the wife in the State of California, is in two counts. The first count alleges: "That at the time hereinafter mentioned the District Court of the Third Judicial District, County of Eureka, State of Nevada, was a court of general jurisdiction, duly created and organized under and by virtue of the laws and Constitution of the State of Nevada"; that defendant husband received a decree of divorce from plaintiff which provided for the payment of $75 a month as alimony for the wife; that the decree is still in full force and effect; that no part of the judgment awarded has been paid except the sum of $892, and that there is due the sum of $5,108, with interest. The second count alleges that on the 17th day of April, 1931, the husband and wife entered into a property settlement agreement providing for the payment of $75 a month for the wife's maintenance and support. Plaintiff prayed for judgment in the sum of $5,108, together with interest and costs, and for such other and further relief as the court might deem proper.

At the outset it is proper to state that, independent of the Nevada decree, the judgment, so far as it applies to the alleged property settlement agreement set forth in the second cause of action may not be affirmed, being predicated

upon the agreement of April 17, 1931, which is not in fact a property settlement, but a mere agreement that for one year $75 a month will be accepted by the wife as maintenance and support, subsequent to which period she shall not be barred or prevented from asking any court of competent jurisdiction to increase the amount. (*Fitch* v. *Tyler*, 105 Cal. App. 306 [288 Pac. 74].) The contract of May 17, 1930, was a property settlement agreement and contained no reference to a fixed amount for support or maintenance, provision being made only that should an action for divorce be commenced, the agreement should not be construed to be a waiver by the wife of her right to support or alimony.

Respondent contends that the two documents should be read together; that the second is a modification of the first. As above noted, the second specifically provides that its terms shall not modify the agreement of May 17, 1930, except in the matter of the monthly payments for support and maintenance, for which there was no provision in the first agreement. There was no duty imposed upon the husband, before the second agreement was signed, to support the wife. Respondent contends that the promise to forbear asking any amount in excess of the $75 a month for one year was a valid consideration for the second agreement. However, the agreement provides that a court of competent jurisdiction may increase the amount. The court could in fact decrease the amount, thus taking from the wife any practical advantage she might have obtained under the terms of the second agreement. The record discloses that the decree of divorce was signed on the same day that the agreement was made. Obviously the agreement was not made as a modification of the property settlement, but as an instrument reciting the intention of the parties in anticipation of the divorce decree. The trial court in its discretion could adopt or reject the terms of the agreement as to maintenance. The wife at any time could have withdrawn her promise to forbear and become entitled to a larger amount within the year had a court of competent jurisdiction so decreed. Under these circumstances we fail to find a good consideration, and the second cause of action must fall. The Nevada court did not have jurisdiction to pass upon the contractual rights of the parties except in connection with matters specifically referred

to in the agreement of May, 1930, which is not the basis of the second cause of action.

■ We will now consider the judgment as based upon the first cause of action, namely, the statutory power of the court to make an order for support, maintenance or alimony. (*Ross* v. *Ross*, 1 Cal. (2d) 368 [35 Pac. (2d) 316].) The wife filed an answer to the complaint for divorce, but did not personally contest the proceeding. The husband obtained the decree, thus placing the wife in the position of the spouse "at fault". In California, the Civil Code, section 139, provides: "Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support, during her life or for a shorter period as the court may deem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects." Nevada, so far as we have been able to ascertain from the briefs on file, or from independent research, does not have a corresponding or even comparable statute. On the contrary, property is awarded "as shall appear just and equitable" (Nevada Compiled Laws of 1929, (Hillyer) secs. 9463, 9465), which leaves the matter entirely in the discretion of the trial court. Section 9463 provides in part: "In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of the children . . . " There is no restriction that support, maintenance or alimony is granted only for the fault of the husband. The nearest approach to such a rule is found in the above section 9463, providing that all rights connected with the children, not otherwise disposed of or regulated by the order of court, shall by such divorce be divested out of the guilty party and vested in the party at whose instance the divorce was granted. This provision is recognized by the highest appellate court in Nevada. In *Blankenship* v. *Blankenship*, 51 Nev. 356, 361 [276 Pac. 9, 63 A. L. R. 1127], the court said : "Divorce is a remedy provided for an innocent party. A divorce for a guilty party is not contemplated

by our statutes respecting this subject, which under certain conditions divest the guilty party of 'all property and pecuniary rights and interests, and all rights touching the children, their custody and guardianship'." The "certain conditions", however, refer to matters not specifically mentioned in the decree. In the present case, the Nevada decree specifically provided for the payment of $75 a month "as and for alimony".

To summarize, California allows alimony in a suitable amount by way of compensation for a wrong done to the wife. (Cal. Civ. Code, sec. 139; *Ex parte Spencer,* 83 Cal. 460 [23 Pac. 395, 17 Am. St. Rep. 266].) Permanent allowance is granted only for the offense of the husband. (*Hogarty* v. *Hogarty,* 188 Cal. 625, 627 [206 Pac. 79]; *Parker* v. *Parker,* 55 Cal. App. 458 [203 Pac. 420].) Alimony is not granted when the divorce is awarded the husband for the fault of the wife (*In re Nielsen,* 19 Cal. App. (2d) 305 [65 Pac. (2d) 360]; *Lampson* v. *Lampson,* 171 Cal. 332 [153 Pac. 238]; *McKannay* v. *McKannay,* 68 Cal. App. 701 [230 Pac. 214]); it will, however, be decreed when found in a contract settling property rights. (*Harwell* v. *Harwell,* 26 Cal. App. (2d) 143 [78 Pac. (2d) 1167]; *Johnson* v. *Johnson,* 104 Cal. App. 283 [285 Pac. 902]; *Marrs* v. *Superior Court,* 137 Cal. App. 579 [30 Pac. (2d) 1030]; *Gaudio* v. *Gaudio,* 138 Cal. App. 289 [32 Pac. (2d) 156].) In Nevada, as we have seen, the question of property rights, and therefore support for the wife, is determined by the court as may appear just and equitable. (*Walker* v. *Walker,* 41 Nev. 4 [164 Pac. 653, 169 Pac. 459].) In a number of other states, wherein a restriction does not prevail, a guilty spouse may be awarded permanent alimony. If the statute does not contain a direct provision thereon, but an inference may be drawn from its language authorizing an allowance of alimony to the guilty spouse, it is legally sufficient. Thus the allowance may be based upon a just distribution of the property and may be awarded in gross or in installments. (17 Am. Jur., p. 478, sec. 615 and cited cases.) No claim having been presented that the decree was obtained by fraud, we conclude that under the statutes of Nevada the trial court had jurisdiction to make the support, maintenance or alimony order of $75 a month to the wife. (*Delanoy* v. *Delanoy,* 216 Cal. 27 [13 Pac. (2d) 719, 86 A. L. R. 1321]; *Parnham* v. *Parnham,* 32 Cal. App. (2d) 93 [89 Pac. (2d) 189]; *Nerland* v. *Nerland,*

173 Wash. 311 [23 Pac. (2d) 24]; *Cardinale* v. *Cardinale,* 8 Cal. (2d) 762 [68 Pac. (2d) 351]; *Van Gelder* v. *Van Gelder,* 61 Wash. 146 [112 Pac. 86]; *Pryor* v. *Pryor,* 88 Ark. 302 [114 S. W. 700, 129 Am. St. Rep. 102]; *Mitchell* v. *Mitchell,* 193 Iowa, 153 [185 N. W. 62]; *Webber* v. *Webber,* 157 Minn. 422 |196 N. W. 646]; *Vigil* v. *Vigil,* 49 Colo. 156 [111 Pac. 833 31 L. R. A. (N. S.) 579]; *Ecker* v. *Ecker,* 22 Okl. 873 [98 Pac. 918, 20 L. R. A. (N. S.) 421]; *Neville* v. *Neville,* 220 Ala. 57 [124 So. 107]; *McFadden* v. *McFadden,* 22 Ariz. 246 [196 Pac. 452].)

■ The cases principally relied upon by appellant (*Marrs* v. *Superior Court, supra, Armstrong* v. *Armstrong,* 132 Cal. App. 609 [23 Pac. (2d) 50], and *In re McKenna,* 116 Cal. App. 232 [2 Pac. (2d) 429]), correctly state or uphold the California rule that an allowance to a guilty wife of alimony, maintenance or support, unless predicated upon a property settlement, is beyond the jurisdiction of a superior court. As stated, such a rule is not in effect in Nevada. However, there is no such inconsistency in the rules of the two states that the morals of the citizens of California would suffer detriment, neither can the Nevada rule be said to be against the public policy of this state, as borne out by our method of permitting the innocent husband to pay to the guilty wife under the terms of a judicial decree if the decree is based upon a property settlement. (*Tripp* v. *Superior Court,* 61 Cal. App. 64 [214 Pac. 252]; *Ex parte Weiler,* 106 Cal. App. 485 [289 Pac. 645]; *Schnerr* v. *Schnerr,* 128 Cal. App. 363 [17 Pac. (2d) 749]; *Baxter* v. *Baxter,* 3 Cal. App. (2d) 676 [40 Pac. (2d) 536]; *Harper* v. *Carpenter,* 24 Cal. App. (2d) (Supp.) 751 [67 Pac. (2d) 762].) In Nevada the decree relative to the payment of alimony was valid without reference to the validity and effect of either or both of the agreements.

■ We desire to call attention to an additional reason why the Nevada decree should be recognized in California or any other state. The general rule is that jurisdiction may not be conferred by stipulation of the parties made in open court or filed in a proceeding. (*Marrs* v. *Superior Court, supra.*) This rule seems to have been modified under the circumstances stated in *Miller* v. *Superior Court,* 9 Cal. (2d) 733 [72 Pac. (2d) 868]. We are not interested in the question of jurisdiction by consent, but in a case wherein Nevada,

under the laws of that state, had jurisdiction to make the decree and the order directing the payment of $75 a month "as and for alimony", regardless of a stipulation. The recital in the decree that it had been stipulated by the parties that the husband would pay $75 a month was not necessary to the validity of the decree. However, a stipulation, not the property settlement of May 17, 1930, nor the agreement of April 17, 1931, which attempted to amend or modify the first agreement, but a third instrument, dated April 17, 1931, and filed in court with the record of the proceedings at the request of or with the consent of the husband, provided that the trial of the action and the final judgment might be entered at any time, and that in the event a decree should be granted, the husband should pay the wife $75 a month as and for alimony until her remarriage.

Providing the court independently has jurisdiction over the proceedings, we fail to find any good reason why a husband, who sought the entry of a decree and allowed it to become final, should thereafter in another jurisdiction be permitted to defeat the judgment. The theory of one-sided guilt in divorce actions does not always accord with reality. The fault is usually divided and the respective position of the parties as plaintiff or defendant may sometimes be determined by the chivalrous attitude of the husband or sometimes by sentimental or religious reasons of the wife, which induces him or her to adopt a passive role in the dissolution of the marriage. The failure of the wife to press a defense or a cross-complaint may be in reliance upon an understanding that the decree will provide for her support. When that understanding is in the form of a signed stipulation, filed in the proceeding, and the court otherwise has jurisdiction, the husband should be and in this instance is estopped from attacking the judgment except in the absence of a clearly expressed intent or a legal obstacle to the contrary. The amount may be the subject of revision to meet changed circumstances; if legally flexible, courts should grant relief, but not declare that portion of the decree invalid unless it is void as *contra bonos mores*. This last question as applicable to the instant case may be considered immediately.

The stipulation was not obtained by the wife through fraud. It did not tend to interfere with the real, substantial status of their marriage contract as the parties were already separated.

They occupied the position of husband and wife in name only. It did not facilitate the divorce any more than the numerous valid property settlements which the courts of this state have recognized and approved. In fact, it was nothing more than a written statement made by the husband and presented to the court that he consented to pay to the wife the sum of $75 a month. Under all the circumstances, we cannot say that the signing of the stipulation by the wife was against public policy. This case is entirely different from *Pereira* v. *Pereira,* 156 Cal. 1 [103 Pac. 488, 134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880], wherein the wife sued the husband for divorce. The parties later became reconciled, resumed marital relations and the divorce action was dismissed. In pursuance of negotiations begun before such dismissal, but after the reconciliation, the parties entered into an agreement wherein the wife waived the cause for divorce but the agreement provided that should the wife establish new cause in a subsequent action for divorce, or maintenance, the husband would pay $10,000 to the wife who waived all further claims. The Pereira agreement was not a separation agreement and the parties were not separated at the time of its execution. The court in that case said (pp. 4, 5) : ''The real effect of the contract to pay the ten thousand dollars, so far as the husband is concerned, would be to provide against liability for a contemplated wrong to be subsequently inflicted by him upon his wife, and to liquidate such liability in advance of the commission of the wrong. The evidence and findings show that the defendant was then possessed of property worth about seventy-seven thousand dollars, was engaged in a very lucrative business, and was receiving an income of about eleven thousand dollars a year which he had every reason to believe would continue. By this contract, if valid, he was left free to inflict upon his wife the most grievous marital wrongs, such as would compel her to obtain a divorce, secure in the protection of his contract that ten thousand dollars would satisfy all her claims against him of a pecuniary nature or in relation to the community property. If he should, after its execution, be moved by evil impulse to commit anew the offenses against his wife which first gave her cause for divorce, or other acts having the same legal effect, the existence of a valid contract of this sort could not but encourage him to yield to his baser inclinations, and inflict the injury. As it

was obviously adopted to produce this result, it is to be presumed that this was one of the inducements which made him desire its execution.''

█ The jurisdiction of the State of Nevada having been established, the judgment rendered therein and presented in this state for the determination of its regularity and validity is to be settled by the laws of Nevada. ''The judicial proceedings of a state are not susceptible of control or limitation by other states to the extent to which contracts are. A contract made in one state, to be performed in another, whose public policy it contravenes, need not be enforced by its courts; but the law of another state or judgment of its courts stands upon a higher footing. The courts of one state cannot refuse to respect the decision of the courts of another state because it is founded upon a law which does not obtain in the former state. A judgment of a sister state is entitled to respect and full faith and credit in other states, however different the law might be. . . . '' (15 R. C. L., p. 916.) (See, also, 4 A. L. R. 968; 10 A. L. R. 716; 24 A. L. R. 1434]; 15 Cal. Jur. 240; *Bruton* v. *Tearle,* 7 Cal. (2d) 48 [59 Pac. (2d) 953, 106 A. L. R. 580]; *Thomas* v. *Thomas,* 14 Cal. (2d) 355 [94 Pac. (2d) 810]; *Spalding* v. *Spalding,* 75 Cal. App. 569 [243 Pac. 445]; *Rinkenberger* v. *Rinkenberger,* 99 Cal. App. 45 [277 Pac. 1096; *Mercantile Acceptance Co.* v. *Frank,* 203 Cal. 483 [265 Pac. 190, 57 A. L. R. 696]; *Barns* v. *Barns,* 9 Cal. App. (2d) 427 [50 Pac. (2d) 463]; *Palen* v. *Palen,* 12 Cal. App. (2d) 357 [55 Pac. (2d) 228]; *Creager* v. *Superior Court,* 126 Cal. App. 280 [14 Pac. (2d) 552]; *Dreesen* v. *Dreesen,* 31 Cal. App. (2d) 479 [88 Pac. (2d) 223]; *Handschy* v. *Handschy,* 32 Cal. App. (2d) 504 [90 Pac. (2d) 123]; *Cummings* v. *Cummings,* 97 Cal. App. 144 [275 Pac. 245]; *Sistare* v. *Sistare,* 218 U. S. 1 [30 Sup. Ct. 682, 54 L. Ed. 905, 20 Ann. Cas. 1061, 28 L. R. A. (N. S.) 1068].) ''The purpose of the full faith and credit clause ought not lightly to be set aside out of deference to a local policy which, if it exists, would seem to be too trivial to merit serious consideration when weighed against the policy of the constitutional provision and the interest of the state the judgment of which is challenged.'' (12 Am. Jur., p. 382.) (See, also, *Milwaukee County* v. *M. E. White Co.,* 296 U. S. 268 [56 Sup. Ct. 229, 80 L. Ed. 220].) Unless inconsistent with its own interests, one state should make effective the laws of another forum. (15 C. J. S., p. 852.)

We may now consider the subject specifically under another phase, namely, estoppel. "As a general rule, however, one may be estopped by an agreement or stipulation made in a judicial proceeding. . . . The case for estoppel by stipulation is greatly strengthened, of course, where the stipulation has been acted upon and the adverse party would be injured if it were not given effect." (19 Am. Jur., pp. 715, 716; *Helpling* v. *Helpling,* 50 Cal. App. 676 [195 Pac. 715].) Evidence upon issues in a case may be limited in accordance with a stipulation of the respective parties. (*Bagley* v. *Ward,* 37 Cal. 121 [99 Am. Dec. 256].) A husband and wife in a divorce proceeding agreeing to an amount to be paid by the husband as support and maintenance are estopped in a subsequent proceeding from denying the scope given by a decree upon the stipulation. (*Dickey* v. *Dickey,* 154 Md. 675 [141 Atl. 387, 58 A. L. R. 634].) In *Dean* v. *Dean,* 136 Or. 694 [300 Pac. 1027, 86 A. L. R. 79], the parties entered into a valid contract for settlement of property rights. A decree based upon the agreement was made. The husband asquiesced therein by making payments in accordance therewith. Subsequently he instituted an action to set aside and vacate all of the decree except the part granting a divorce. At page 1029, the court said: " 'A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction. The question whether the court had jurisdiction either of the subject-matter of the action or of the parties, it is not important in such cases. Parties are barred from such conduct not because the judgment is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated.' (*Bledsoe* v. *Seaman,* 77 Kan. 679 [95 Pac. 576], quoted in 3 Freeman on Judgments, [5th ed.], p. 2963.) "

The last point urged by appellant is that the complaint in its allegations is merely one for a money judgment and does not allege in the body or mention in the prayer that plaintiff sought to have the Nevada decree entered as a California judgment. The statement is correct. Though the prayer may be imperfectly or incompletely framed, if the allegations of the complaint are sufficient, the court in some instances, where the prayer contains the stereotyped phrase

"such other and further relief as the court may deem proper", may render a judgment beyond the specific relief requested. But, not so, if the allegations of the complaint do not raise an issue that justifies such finding and judgment. The present judgment provides that it "be entered herein as a foreign judgment, with the same force and effect as if said Decree and Judgment had been granted in this Court. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff herein be given judgment against said defendant herein in the sum of Four Thousand One Hundred Three ($4,103.00) Dollars, together with interest thereon from the date hereof at the rate of seven percent (7%) per annum." Respondent seeks to justify the first part of the judgment, that is, its entry as a continuing judgment in California, upon the theory that the word "issue", as used in Code of Civil Procedure section 590, "is broader than the complaint where the answer enlarges the same by introducing new matter" (*McAllister* v. *Union Indemnity Co.*, 2 Cal. (2d) 457 [42 Pac. (2d) 305]), and that when necessary allegations of the complaint are omitted, but supplied by the averments of the answer, the defect is cured. (*Williams* v. *Bullock Tractor Co.*, 186 Cal. 32 [198 Pac. 780].) She does not, however, call our attention to the averments in the answer that supply the deficiency in the complaint. Upon examination of the answer we find, attached to it as exhibits, the Nevada decree, the property settlement agreement of May 17, 1930, the agreement of April 17, 1931, and the stipulation of April 17, 1931. The answer admits that the Nevada court had jurisdiction to grant the divorce but alleges that it did not have jurisdiction to make an order for the payment of money for support, maintenance or alimony. We cannot find that the answer sets forth new matter, or admitted sufficient allegations of the complaint to justify the order that the Nevada judgment should be entered in California with the same force and effect as if it had been granted in this state. When it appears that relief has been granted by the judgment beyond the prayer and beyond the issues, the general rule that judgments of competent jurisdictions are accompanied with the presumption of verity ceases. (*Remington* v. *Superior Court*, 69 Cal. 633 [11 Pac. 252] ; *Petition of Furness*, 62 Cal. App. 753 [218 Pac. 61] ; *Kredo* v. *Phelps*, 145 Cal. 526 [78 Pac. 1044] ; 1 Black on Judgments, 2d ed., sec. 242; 1 Free-

man on Judgments, 5th ed., sec. 355; *Sache* v. *Wallace,* 101 Minn. 169 [112 N. W. 386, 118 Am. St. Rep. 612, 11 Ann. Cas. 348, 11 L. R. A. (N. S.) 803].) The part of the judgment based upon the second cause of action cannot be sustained.

That part of the decree based upon the first cause of action and founded upon the full faith and credit clause of the Constitution, giving judgment for arrearages due under the Nevada decree, is affirmed; that part of the judgment which purports to establish in this state the Nevada judgment as a continuing judgment is reversed.

Peters, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 17, 1940.