[Civ. No. 12876. First Dist., Div. Two. Aug. 17, 1945.]

ALEX HYDE et al., Respondents, v. P. O. HAGEN et al., Appellants.

518

J. W. Coleberd for Appellants.

Clarence E. Todd for Respondents.

STURTEVANT, J.—The plaintiffs Alex Hyde and Mae Sewell commenced an action against the defendants P. O. Hagen, Margery Hagen, his wife, Robert P. Hagen, his son, and Hagens, Inc., to recover damages for an alleged breach of contract. The defendants answered and the action was tried before the trial court sitting without a jury. The court made findings in favor of the plaintiffs and from the judgment entered thereon all of the defendants have appealed.

Prior to August 1, 1940, the defendant P. O. Hagen was the owner and operating a store in San Mateo. For a few months prior thereto Mrs. Mae Sewell occupied space in the store and was engaged in selling corsets. Shortly prior to August 1, 1940, Mr. Hagen and Mrs. Sewell commenced conversations regarding the investment by Mrs. Sewell in the business so conducted by the defendant Hagen. In those conversations the matter of opening other stores was mentioned and discussed. Mrs. Sewell advised Mr. Hagen that she had financial backing by the plaintiff Alex Hyde, and at times Mr. Hyde appeared and took part in said conversations. Prior to said conversations Mr. Hagen from time to time wrote down certain memoranda and afterwards the parties met and discussed said memoranda. The first document discussed by them was as follows: "Officers of Corporation would be as follows P. O. Hagen, Pres. Mae Sewell V. Pres. Robert Hagen Secy. & Treas. Suggested

salaries P.O.H. 200.00 pr. mo. Mrs. Sewell 150 Robert No salary until needed. These could be changed as profits would permit. The reason I want Robert in is to train him to be able to take charge of the business in the future and would take him in when we could and when the buying and managing would be too much for one. P.O.H.''

Mr. Hyde was dissatisfied with said document claiming it was incomplete. The parties met later and Mr. Hagen produced a document in words and figures as follows:

''Mr. Hyde Proposed Plan for incorporating—Stock to P. O. Hagen for net worth of present store and good will ($1000) should be about $4500 Mr. Hyde and Mrs. Sewell to subscribe for $4000 to be issued and paid for as needed —Salaries until profits would permit increases P.O.H. 150 Mrs. Sewell 100 Mae Hagen 100. Stock in present store to be taken at cost value (It is practically all new) and fixtures at cost.''

At a later meeting Mr. Hagen produced another document which is as follows:

''Suggested plan for expansion Incorporate (100 shares @ 100 ea. $10,000. Issue stock as follows—Take in San Mateo store in which mds. and fixtures would be about . . . . . . $3500 net.

| Good will | 1000 |
|---|---|
| Stock to P. O. Hagen | $4500 |
| Would sell to Mrs. Sewell or others | 4000 |
| | $8500 |

Leaving 15 shares open.''

Later the parties formed a corporation having a capital stock of 100 shares of the par value of $100 each. Forty shares were issued to Mr. Hagen, twenty-five shares to Mr. Hyde, and five shares to Mrs. Sewell. That left thirty shares of stock unissued. After the corporation was formed a meeting of the stockholders was held at which Mr. Hagen, Mrs. Hagen, and Mrs. Sewell were elected directors. The directors met and chose Mr. Hagen as president, Mrs. Sewell as vice president, and R. P. Hagen as secretary and treasurer. As so organized the corporation proceeded to conduct business.

Mrs. Sewell stopped her corset business and commenced

to work for the corporation immediately after it was formed and continued until the latter part of June, 1941. The exact date is not stated in the record. At that time she stated to Mr. Hagen that she was going to take a leave of absence. Mrs. Sewell acted as a director until the 6th day of January, 1942, when, as alleged in the answer of defendants, "she was deposed and deprived of her said position as director and vice president." On a date not stated in the record she reported for work and Mr. Hagen stated to her that he had all of the help that the business needed and could not employ her at that time.

Prior to Christmas in the year 1941 Mr. Hyde and Mrs. Sewell went to Oregon on a visit. While there and on December 24, 1941, Mr. Hyde wrote to Mr. Hagen giving the latter his post office address as Harbor, Oregon. In that letter he stated: "Believe your stockholders meeting is the *second Tuesday in January*. I'll be back before that time." On the 27th of December Mr. Hagen wrote Mr. Hyde acknowledging receipt of that letter. Among other things he stated: "Received your letter, hope you are having a good time—yes our meeting is as you state." Later Mr. Hyde left Oregon and returned. On January 2, 1942, Mr. Hagen wrote Mr. Hyde as follows: "Just discovered that our meeting is the *first Tuesday in January at 2 p.m.*" That letter was mailed to Harbor, Oregon. The first Tuesday in January, 1942, was January 6. The letter was not received by Mr. Hyde until after that date. Neither Mr. Hyde nor Mrs. Sewell attended the stockholders meeting.

After the organization of the corporation on the 28th day of August, 1940, a resolution was adopted fixing the salary of P. O. Hagen as president at $150 per month and the salary of Mrs. Sewell as vice president at $100 per month. At a meeting of the board of directors on the 24th day of March, 1942, a motion was duly carried "that the salary of P. O. Hagen, President, be increased to $250 per month beginning April 1st, 1942." Later, at a meeting of the board of directors on the 5th day of January, 1943, a motion was duly carried "to elect Mr. P. O. Hagen to continue as president of the corporation at a salary of $3000 for the year 1943." As a part of the same resolution it was ordered that Mrs. M. B. Hagen be elected vice president for the year 1943 with salary of $1,500.

At the same meeting of the stockholders held January

5, 1943, Mrs. C. Todd appeared as a proxy representing Mr. Hyde and Mrs. Sewell as stockholders. At a proper time and in a proper manner she made a motion that Mrs. Sewell be elected a director. In support of her motion she cumulated the shares held by her under her said proxy and offered to vote the cumulated shares in favor of Mrs. Sewell. Her offer was refused and the stockholders purported to elect P. O. Hagen, M. B. Hagen and R. P. Hagen.

The plaintiffs pleaded a cause of action seeking a money judgment. As to the payment or nonpayment of said increased salaries to P. O. Hagen and Margery Hagen the pleadings contain no allegations or denials. No evidence thereon was offered by either party. The trial court rendered a judgment in favor of the plaintiffs and against the defendants (1) that Mae Sewell to have judgment against P. O. Hagen and Hagens Inc. in the sum of $100 for each month after June, 1941; (2) that defendant P. O. Hagen repay to Hagens Inc. $100 per month beginning with the month of April, 1942; (3) and that Margery Hagen repay to said Hagens Inc. the sum of $25 per month beginning with the month of January, 1943.

The defendants contend that the findings are not supported by the evidence and that the findings do not support the judgment.

It was the theory of the plaintiffs that the parties entered into a promoters' contract agreeing to organize a corporation, distribute the corporate stock among them, elect Mr. Hagen president, elect Mrs. Sewell vice president, and to fix the salary of Mr. Hagen at $150 per month, the salary of Mrs. Sewell at $100 per month, and the salary of Mrs. Hagen at $100 per month. Each and all of those steps were duly taken. No evidence was tendered by either party as to what salaries or the amount thereof was paid to any one of said persons. It was also the theory of the plaintiffs that the contract provided that Mrs. Sewell should be elected vice president and that she should be employed as a saleswoman and that such contract was a continuing contract.

As recited above Mrs. Sewell left her position in the latter part of June, 1941. The exact date does not appear. Later she returned and asked to be reemployed. The date of that request is not shown in the record. Manifestly she could not recover for the period between the date when she

took the leave of absence and the date when she made a demand to be reemployed. Neither date having been established any right to recovery by her cannot be ascertained. Therefore, the judgment in favor of Mrs. Sewell must be reversed.

The judgment in favor of the corporation must also be reversed because the matters on which it was based were not within the issues made by the amended complaint and answer thereto. The amended complaint does not allege the payment of the increased salaries. The answer did not affirmatively introduce that issue. The finding thereon was not responsive to the pleadings or the evidence. Therefore that part of the judgment must also be reversed. (*Morrow* v. *Morrow*, 40 Cal.App.2d 474, 485 [105 P.2d 129]; Code Civ. Proc., § 580; 14 Cal.Jur. 975, Judgments, § 62; 2 Cal. Jur. 1031, Appeal & Error, § 613; 24 Cal.Jur. 983, Trial, § 212.)

The judgment appealed from is reversed.

Nourse, P. J., and Dooling, J. pro tem., concurred.

A petition for a rehearing was denied September 15, 1945, and respondents' petition for a hearing by the Supreme Court was denied October 15, 1945.