[Civ. No. 5354. Third Appellate District.—August 7, 1935.]

ROSE LORRAINE, Respondent, v. DAVID G. LORRAINE et al., Appellants.

Lawrence Cobb for Appellants.

Henry G. Bodkin, Bingham Gray, G. Stuart Silliman and V. P. Lucas for Respondent.

PULLEN, P. J.—This is an appeal from a judgment awarding to plaintiff one-half of certain property which had once been the community property of plaintiff herein and defendant David G. Lorraine. Rose Lorraine and David G. Lorraine intermarried in California on January 23, 1920, and continued to live together as husband and wife until about January 29, 1926, at which time they separated, David G. Lorraine going to Texas, and there on August 8, 1927, he obtained a divorce. Service in this action was obtained by publication of summons, based upon an affidavit by Lorraine that the whereabouts of his wife were to him unknown, although the record discloses that at that time he was having his wife shadowed and was receiving frequent reports as to her activities and he knew where she was at all times. No attempt

was made to notify Rose Lorraine of the fact of a divorce or of the findings of the court, and it was not until late in 1929 that she learned of the divorce. The decree made no reference to any of the property of the parties, but merely dissolved the bonds of matrimony existing. Thereafter and on November 25, 1927, Lorraine and Sarah R. Irwin were married and are now husband and wife.

Prior to the separation of Lorraine and Rose L. Lorraine a property settlement had been entered into by which Rose Lorraine received $10,000 in full settlement of their property rights.

In 1930 Rose Lorraine brought the present action, wherein she sought first a divorce, secondly, that the property settlement be set aside upon the ground of fraud, and, lastly, that she be given an equitable share of what had been community property and which had been transferred to others by Lorraine.

In paragraph XIV of her complaint it is alleged in substance that on or about the twenty-seventh day of August, 1925, through the fraud, misrepresentation and undue influence of David G. Lorraine, she was compelled to and did sign a property settlement and agreement, and at that time, and as part of the representations calculated to induce and which did induce plaintiff to sign the settlement, he represented that he had no real property or any interest therein that she could obtain; that he was "broke" and deeply in debt and that the Lorraine Corporation was insolvent; that Lorraine at that time sent his secretary and bookkeeper to plaintiff, who told her that Lorraine was insolvent and that the Lorraine Corporation also was insolvent. Lorraine also at that time sent his then business associate, who represented to her that Lorraine and the Lorraine Corporation were insolvent, and also sent other persons and employees to plaintiff, both prior to and at the time of the execution of the property agreement, who represented to her that Lorraine had no money and was heavily in debt and that the Lorraine Corporation was not doing any business and was in fact insolvent, and that he was on the verge of going through bankruptcy. It was also alleged Lorraine instructed his secretary and bookkeeper to give to plaintiff no information whatsoever respecting his financial standing or financial status of

the Lorraine Corporation, and that on occasions when plaintiff accompanied her husband to the plant of the Lorraine Corporation he would not permit her to enter the offices, but would leave plaintiff outside and he would enter the office and lock the door after him preventing plaintiff's entrance.

It was further alleged that plaintiff did not discover the fraud which had been perpetrated against her by the defendant David G. Lorraine until about February, 1930, when she discovered the true state of affairs and the fraud and misrepresentations which had been practiced upon her; that the said property agreement referred to was unjust, unfair and inequitable and that said representations were false and were then known by said defendant Lorraine to be false and were made with intent to deceive and defraud plaintiff and did in fact deceive and defraud plaintiff, and plaintiff believed and relied upon such representations and was thereby induced to sign the property agreement. It is also there alleged that said defendant Lorraine was at that time worth in excess of a million dollars.

The prayer of the complaint is for a divorce dissolving the bonds of matrimony, asking that a receiver be appointed to hold the community property, and for an accounting of all of the property of David G. Lorraine, and that such portion of the community property be granted and set apart to plaintiff as shall be equitable and just and for such other and further relief as to the court may seem just and meet.

No demurrer was interposed to the complaint by defendants, but an answer thereto was filed upon behalf of David G. Lorraine, Sarah R. Lorraine and the Lorraine Corporation, denying the various material allegations and particularly the allegations of paragraph XIV of the complaint, thereby putting in issue the question of fraud and undue influence and alleging that the property settlement therein referred to was just, fair and equitable to plaintiff. After a trial before the court upon the issues framed, findings were made that plaintiff Rose Lorraine and David G. Lorraine were not husband and wife, the marriage having been dissolved by decree of the Ninety-fifth Judicial Court of Dallas, Texas, on August 8, 1927, which judgment had not been vacated, set aside, reversed or appealed from and had become final and was in full force and effect.

The court also found, and we may add that all the findings are fully supported by the evidence, that at the time of the marriage of plaintiff and defendant David G. Lorraine, said defendant was practically destitute and plaintiff herein advanced to defendant large sums of money upon the understanding that the said amount would be invested in the Lorraine gas trap and that she would share equally with defendant David G. Lorraine in the proceeds arising from the manufacture and sale of said trap. The court then found that the various parcels of real and personal property were the community property of plaintiff and defendant David G. Lorraine, and were acquired during their marriage or were an increase of said community property and had been transferred to the Lorraine Corporation.

Among the assets of the Lorraine Corporation were various patents apparently of great value, the first patent thereon being issued to Lorraine on April 5, 1921, known as oil, gas and sand separator. Following that original patent some twelve or fifteen other patents were issued to Lorraine having to do apparently with the separation of gas and oil, the patents therefor being issued at various dates subsequent to April 5, 1921, over a period of four or five years, and while the Lorraines were living together as husband and wife.

Various acts of cruelty and abuse inflicted by defendant Lorraine upon plaintiff during their married life were also found to be true and set forth in the findings.

Dealing particularly with the allegations of paragraph XIV hereinbefore summarized, the court found that it was true that defendants David G. Lorraine and Sarah R. Lorraine and the Lorraine Corporation had fraudulently conspired and combined together to deceive and defraud plaintiff to prevent her from recovering of and from defendant David G. Lorraine her just proportion of the community property. It was also found to be true that on the twenty-seventh day of August, 1925, through fraud, misrepresentation and undue influence of defendant David G. Lorraine, plaintiff was compelled to and did sign a property settlement and agreement. The court then found to be true substantially all of the allegations of paragraph XIV of the complaint, hereinbefore summarized.

The court found that plaintiff believed such representations which induced her to sign said property agreement and that plaintiff in executing said agreement relied upon her husband David G. Lorraine, and his agents, employees and representatives because of the faith and confidence she had in her husband David G. Lorraine.

The court also found it to be a fact that defendant David G. Lorraine prevented plaintiff from obtaining information from his employees or from entering the place of business of the Lorraine Corporation, and also found that plaintiff was at that time without business experience and that David G. Lorraine took an unfair and unconscionable advantage over plaintiff in that at the time and place and prior to the signing of the agreement, plaintiff did not know the facts therein set forth nor did she discover the fraud which had been perpetrated against her until on or about February 15, 1930.

The court also found that said agreement was unfair and inequitable to plaintiff and that in fact and in truth the said defendant David G. Lorraine at the time of the execution of said property settlement had in his possession community property worth approximately $750,000, and that it is not true that plaintiff, at the time of the execution of the property settlement, had full or any knowledge of the financial condition and the property of David G. Lorraine or of the Lorraine Corporation, or that she was thoroughly, or at all, familiar with or knew of her own knowledge, the amount, character or value of all or any community property belonging to herself and defendant David G. Lorraine, or that she had independent advice of counsel concerning the matter. In this regard the court found that prior to the time of the execution of said property settlement David G. Lorraine sent plaintiff to see a certain attorney stating that said attorney would represent her in the proposed agreement. This attorney stated to plaintiff that he could not represent her in said controversy but that it would be necessary for plaintiff to have counsel in the matter, and that said attorney thereupon stated he would take her to a good attorney who would properly protect her interests. Plaintiff thereupon was sent to the office of an attorney, who was in fact the brother-in-law of the attorney with whom she first consulted, but of the relation-

ship she did not know until long after the execution of said property settlement. The court further found the attorney with whom she consulted made no investigation, however, to ascertain the true financial condition of David G. Lorraine or the Lorraine Corporation and allowed plaintiff to make a settlement without fully advising her as to her rights or being in a position to advise her as to the making of said agreement. The finding then proceeded to set forth the property holdings of the defendant David G. Lorraine and his earning power, and the fact that plaintiff herself was in ill health, without earning capacity, and has separate property of the value not to exceed $10,000.

Upon these findings the court entered judgment denying plaintiff a divorce upon the ground that the decree granted by the Texas court was a valid and a subsisting judgment terminating the marriage between plaintiff and David G. Lorraine. Furthermore, upon the ground that defendant had defrauded plaintiff of her interest in the community property the court set aside the property settlement theretofore entered into between Rose Lorraine and David G. Lorraine and awarded to plaintiff one-half of the property found by the court to have been community property at the date of the divorce decree and the earnings therefrom and the increase thereof.

From this judgment defendants appeal, claiming the court, having denied the divorce, was without jurisdiction either to set aside the property settlement, or to determine the character of the property to be community property or to divide the same.

As to the contention that the court was without power to set aside the property settlement, it will be remembered that paragraph XIV of the complaint set forth a detailed account of the execution of the property settlement and of the false and fraudulent inducements made by defendant Lorraine. All of the essentials of a cause of action for fraud were alleged. The fraudulent representations were shown, together with allegations that they were actually false and known to defendant to be false, that they were made with intent to deceive plaintiff for the purpose of inducing her to enter into the transaction, that plaintiff relied upon the representations, believing them to be true, and that she was deceived thereby.

(12 Cal. Jur., p. 806.) No demurrer was interposed to the complaint nor any objection raised at the trial as to the sufficiency of the pleadings or as to the question of fraud or misrepresentation so pleaded. By the answer defendants denied the allegations and directly met the issue in the trial court, where, after full and complete hearing, the trial court found against defendants and in favor of plaintiff upon the issues there presented. Neither was a motion for new trial presented to nor requested of the trial court.

An examination of the pleadings, the evidence and the findings show that the contract was set aside because of the fraud practiced in its procurement. In the case of *Locke Paddon* v. *Locke Paddon*, 194 Cal. 73 [227 Pac. 715], the wife brought an action for divorce and alleged she had been induced to sign a property settlement by fraudulent representations made to her by her husband to the effect that he had no separate or community property and was bankrupt. It was there held that in every divorce action the court had jurisdiction to examine the property settlement between the parties and to either affirm or disregard it. In *Mason* v. *Mason*, 219 Cal. 111 [25 Pac. (2d) 461], upon this subject the court said:

"It is next urged that the court below, having denied a divorce to either party, was without jurisdiction to vacate the homestead and award an undivided one-half interest in the property to each spouse. The failure to decree a divorce did not oust the court of jurisdiction to adjudicate the title to the property, where such title was put in issue by the pleadings. Furthermore, although judgment of divorce is denied, the court may, in an action for divorce, provide for the maintenance of the wife by the husband (Civ. Code, sec. 136), and in doing so may make the same disposition of the community property and of the homestead as would have been made if the marriage had been dissolved. (Civ. Code, sec. 137.)"

In the instant case defendant by his answer submitted to a court of competent jurisdiction not only the question of the property in general but also the question of his good faith in the execution of the property settlement, and upon those issues the court found contrary to defendant.

Appellants also contend the relief is not warranted by the prayer of the complaint, but section 580 of the Code of Civil Procedure provides:

"The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue."

The following cases construing this section hold the plaintiff is entitled to such relief as the complaint may show her to be entitled to even in the absence of a prayer for general relief: *Nathan* v. *Dierssen*, 164 Cal. 607 [130 Pac. 12]; *Goldsmith* v. *Board of Education*, 63 Cal. App. 141 [218 Pac. 296]; *Baar* v. *Smith*, 201 Cal. 87 [255 Pac. 827]; *Johnson* v. *Polhemus*, 99 Cal. 240 [33 Pac. 908].

█ Appellants claim also that the Texas decree is conclusive against plaintiff's claim to an interest in any community property for the reason that the Texas decree is final upon that subject. Appellants cite cases, of which *Metropolitan Life Ins. Co.* v. *Welch*, 202 Cal. 312 [260 Pac. 545], and *Brown* v. *Brown*, 170 Cal. 1 [147 Pac. 1168], are typical. In the latter case plaintiff alleged that there was no community property and defendant defaulted. In such a situation the courts hold that where a judgment is rendered upon such a complaint and no appearance is made by defendant it becomes in effect a contract between the parties and the judgment is final in respect to everything properly embraced within the allegations of the complaint and in the prayer for relief. The decree, although silent as to any property, operates, nevertheless, as an adjudication that at the time the action was begun there was no community property. In the case of *Metropolitan Life Ins. Co.* v. *Welch, supra,* an action in interpleader was filed by plaintiff insurance company to require the defendants to litigate the right to the proceeds of a certain insurance policy. Prior to the date of the commencement of this action the defendant wife, as plaintiff, had filed a complaint in an action for divorce in which certain property was enumerated as community property, no mention, however, being made of the insurance policy in question. The husband having defaulted, a decree was entered awarding all the community property to the wife. The court held that this provision of the decree could not be deemed to extend to any property other than that described in the complaint, the court saying:

"The parties having had an opportunity to litigate the question as to what part or portion of their property is community property, and having actually, under proceedings in which all of the community property apparently was involved, obtained a final decree establishing and determining the respective rights of the parties to said community property, said decree must be held to be a conclusive determination of all the rights of said parties in and to not only the community property described therein, but in and to all property owned by either of them. This rule, of course, would not be applicable when the final decree makes no disposition whatever of the community property. In such a case the former spouses become tenants in common in the community property and their rights thereto could be determined in a subsequent action. (*Estate of Brix*, 181 Cal. 667, 676 [186 Pac. 135].) "

In the present case the Texas decree was obtained by publication of citation. No actual notice was received by plaintiff of the commencement or pendency of the divorce action until shortly prior to the commencement of the present action; also in the cited cases relied upon by appellants fraud was not an issue, whereas in the present case it becomes a vital factor in the determination of the case.    Appellants also contend that it affirmatively appearing in the answer to plaintiff's complaint herein that defendant had procured a divorce, the court in the present action had no power to proceed until it was determined that a marriage relation existed between the parties. The case of *Hite* v. *Hite*, 124 Cal. 389 [57 Pac. 227, 71 Am. St. Rep. 82, 45 L. R. A. 793], is cited in support thereof. In that case the wife sued for divorce and defendant in his answer made a complete denial of the facts alleged by plaintiff as constituting a marriage. The trial court granted her prayer for alimony and counsel fees, which order was upon appeal set aside, the court holding, "to justify alimony marriage must be admitted or proven".

In the instant case no alimony nor counsel fees were asked and it is not with those subjects we are here concerned. Furthermore, an order for temporary alimony, being a final judgment, from which an appeal might be taken, it was necessary that the marriage upon which the liability was predicated must be first established. In the instant case the court found at the time of the Texas decree the parties thereto owned as

a community certain property.  ▊ The fact that there was no reference to such property in the decree did not vest title thereto in Lorraine, but the parties then became owners in common in the property which the court in the present action could partition and specifically award. (*Metropolitan Life Ins. Co.* v. *Welch, supra.*) The complaint was so framed and the court so held.

In an action commenced in equity the court will grant such relief whether legal or equitable as the parties are entitled to. In *Spalding* v. *Spalding*, 75 Cal. App. 569 [243 Pac. 445], a divorced wife brought an action against her former husband and his parents to compel conveyance to her of property awarded plaintiff in a divorce action, but by reason of the fact plaintiff had title to only a portion of the real property the court allowed a money judgment for the deficiency, saying:

"It is, indeed, the duty of a court of equity, when all the parties to the controversy are before it, to adjust the rights of all and leave nothing open for further litigation." (To the same effect is *California Raisin Growers Assn.* v. *Abbott*, 160 Cal. 601 [117 Pac. 767].)

In the case of *Marshall* v. *Marshall*, 138 Cal. App. 706 [33 Pac. (2d) 416], the plaintiff wife brought an action for divorce and alleged that there was no community property, but that plaintiff was the owner of certain property as her separate estate and that if the defendant made any community claim thereto he be required to set forth the nature of such claim. In his answer the defendant alleged that the property claimed by plaintiff was the community property of the plaintiff and the defendant. The court denied the divorce to the plaintiff and quieted plaintiff's title to the property in question. The court in holding it had jurisdiction in divorce actions to quiet title to separate property of one of the parties, even though the divorce be denied, said:

" 'But the superior court in which the action for divorce must be brought is also invested with general jurisdiction to determine title to real property, whether based on legal or equitable claims, and if the parties in a divorce proceeding see fit to make the character of property held by them— whether separate or community—an issue in the proceeding, as the court is vested with jurisdiction to determine that

question, as fully as if the title were put in issue in a direct action brought for that purpose, the same effect must be given to its judgment as if such an action had in fact been brought.' The same doctrine was restated and applied in *Carr* v. *Carr*, 39 Cal. App. 53 [177 Pac. 856], wherein the court said: 'Conceding that in an ordinary proceeding for divorce the court is not authorized to dispose of the separate property of either party, that rule does not apply in a case where the action is dual in its character, seeking not only a divorce but an adjudication as to the separate character of certain described property and a decree in effect quieting plaintiff's title thereto. The issue as to the property having been fairly made and by both parties submitted to the court for determination, the court had jurisdiction to determine the question involved as to the character of the property and to quiet the title of the rightful owner thereto. (*Glass* v. *Glass*, 4 Cal. App. 604 [88 Pac. 734]; *Allen* v. *Allen*, 159 Cal. 197 [113 Pac. 160].)' Another case holding to the same effect is *Barrow* v. *Barrow*, 42 Cal. App. (50) 51 [183 Pac. 364]. . . .

"On the issues thus framed and submitted for determination, the trial court after denying plaintiff a divorce found that the parties had acquired community property but held that no disposition would be made thereof; and then with respect to the real property found as alleged in the complaint, 'That plaintiff herein is the owner of the following described property located in the county of Los Angeles, California, as her sole and separate property (here followed the description); the court further finds that the defendant herein has no right, title, claim or interest in or to said real property.' The conclusions of law and the judgment conformed to the findings.

"The appeal having been taken on the judgment roll alone, it must be presumed, of course, that evidence was introduced on the contested issue relating to the title to the real property and that the findings and judgment are supported thereby. Therefore, since it affirmatively appears that plaintiff's action was dual in its character, in that she sought not only a divorce but an adjudication as to the character of the real property described therein and a decree quieting her title thereto, and that defendant joined in asking the trial court

to adjudicate that issue, it must be held here, in conformity with the rule of the cases cited, that the trial court did not exceed its jurisdiction in determining the issue.''

Therefore, the question of the respective rights of the parties to the property in question having been submitted to the trial court without objection, and the court having determined that at the date of the divorce the parties thereto owned certain community property and no disposition thereof having been made, the court had the right to pass upon the interests of the parties in and to the same and to award to each one-half of the property then held in common by the former husband and wife.

It is the contention of appellants that if the parties became tenants in common of their former community property on and after the date of the Texas decree and being tenants in common of such common property, Lorraine was left in possession thereof without objection by his cotenant, the tenant out of possession cannot recover rent for the cotenant's occupancy of the property nor for profits derived from the property by means of the occupant's own labor, either in law or in equity, citing in support thereof *Pico* v. *Columbet*, 12 Cal. 414 [73 Am. Dec. 550], *Howard* v. *Throckmorton*, 59 Cal. 79, and *McWhorter* v. *McWhorter*, 99 Cal. App. 293 [278 Pac. 454]. It will be noted, however, that these cases involved the right of tenants out of possession to recover rents, issues and profits realized from the use and cultivation of real property. Neither was the possession of the property there involved obtained by fraud, whereas we again recall that Lorraine as one of the tenants in common obtained possession and control of plaintiff's right to the property in question by fraudulent means.

In the case of *Coats* v. *Coats*, 160 Cal. 671 [118 Pac. 441, 36 L. R. A. (N. S.) 844], plaintiff and defendant were married and several years later defendant procured a decree of annulment. Thereafter the plaintiff brought an action for division of the property. The court, pointing out that the property acquired through the joint efforts of the parties constituted community property to the time of annulment, and although it ceased to be community property on entry of decree of annulment, nevertheless, it should be divided as community property, said:

"Until the making of the annulment decree, the marriage was valid, and the property in question was impressed with the community character. Upon annulment, such property, even though it be no longer community property, should be divided as community property would have been upon a dissolution of the marriage by divorce or the death of the husband."

█ It is also the contention of appellants that patents issued to David G. Lorraine and by him transferred to the Lorraine Corporation were the separate property of defendant David G. Lorraine. These inventions consisted of a device or method of separating oil and gas and was referred to as an oil and gas trap. The record shows that but one application had been made for a patent prior to the marriage, which was rejected by the patent office, and the same was not issued until five years after the marriage. The court found that after the marriage plaintiff advanced to defendant Lorraine over a period of approximately eighteen months, a large sum of money upon the understanding the same was to be invested in the Lorraine gas trap and that the plaintiff would share equally with defendant Lorraine in the proceeds realized by the manufacture and sale of such trap. The court also found that the various patents of Lorraine, and which had been assigned by him to the Lorraine Corporation, were the community property of the plaintiff and defendant. This was a question of fact upon which the court had a right to find, and having found upon conflicting evidence that the same was community property we are bound thereby. The evidence shows that the patents were in fact all applied for after the marriage, with the one exception referred to above and that was rejected. The presumption is that they were community property and the burden was upon defendants to overcome such presumption by clear and convincing evidence, which they failed to do. █ The evidence also disclosed that at the time of the marriage plaintiff had funds which she made available for the use of defendant to prosecute the application for his patents and to develop and improve the idea involved in the application made for the patent on the separator and valve combination, which advances were made with the understanding they were to be used in the business of manufacturing and selling the gas trap and that

plaintiff should have a half interest in the profits realized from the venture. The funds of plaintiff and the earnings of Lorraine and the income from the business were apparently indiscriminately commingled and there was no attempt at the trial of this action to trace the funds so commingled. The rule is well established that when separate and community property are commingled in such manner that it is impossible to trace the funds the character of the whole fund will be treated as community property and the burden is upon the spouse who claims the property is separate in its nature to affirmatively prove the assertion. (5 Cal. Jur., p. 298.)

No advantage is to be gained by a further discussion of the many points urged by appellants, but it is sufficient to say that plaintiff assisted defendant David G. Lorraine financially before and during their marriage, and while they were married Lorraine continued to work on his inventions and in the development of his business and that his wife made substantial contributions to the same and that the evidence is amply sufficient to justify the trial court in determining that the patents were in fact community property and that any profits therefrom were likewise community property. We are also convinced that the evidence justified the court in its conclusion that by fraud and misrepresentation plaintiff was led into a property settlement. We are also of the opinion that the court was justified both by the law and the facts in setting aside the property settlement and awarding to plaintiff an equal division of the property belonging to the community at the date of the divorce and the increase therefrom.

The judgment therefore should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 6, 1935, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 3, 1935.