Helene Marceau **SIDEBOTHAM**, Appellant,

v.

W. L. **ROBISON**, Administrator of the Estate of Robert Sidebotham, Deceased, and Robert Sidebotham and James Sidebotham, Appellees.

No. 14192.

United States Court of Appeals Ninth Circuit.

Oct. 18, 1954.

Rehearing Denied Jan. 12, 1955.

Manuel Ruiz, Jr., Los Angeles, Cal., for appellant.

Delger Trowbridge, San Rafael, Cal., Frank J. Fontes, San Francisco, Cal., for appellee Robison.

Theodore M. Monell, San Francisco, Cal., for appellees Sidebotham.

Before HEALY and POPE, Circuit Judges, and YANKWICH, District Judge.

YANKWICH, District Judge.

On October 10, 1950, the appellant filed an action in the Superior Court of the State of California in and for the City

and County of San Francisco, in which she sued Phil C. Katz, the Administrator of the Estate of Robert Sidebotham, deceased, and Robert Sidebotham and James Sidebotham, who claim to be heirs at law, to quiet title, for an accounting and injunction. Phil C. Katz was the Public Administrator, who has been replaced in office by W. L. Robison.

In the first cause of action, the appellant alleged that she was married to Sidebotham in a ceremonial marriage on May 30, 1928, and was divorced on November 14, 1946, the marriage being "dissolved by a court of competent jurisdiction", that the matrimonial domicile of the appellant and decedent "was at all times, the State of California". This count of the complaint stated that, during the marriage, the deceased accumulated real and personal property within the State of California and elsewhere having a total value in excess of $100,-000.00, that this was community property of the marriage in which she had a present and existing interest and the right to immediate possession by reason of survivorship of the property. By reason of the possession and control of the property and assets by them, appellees are in a position to divert the property to her injury.

In a second cause of action, the appellant alleged generally, as a common count, that she was the owner of and entitled to the possession of the property, both real and personal, acquired by Sidebotham between January 1, 1927 and November 14, 1946, as well as the increase thereof since that date, including the property which the decedent possessed at the time of his death. She asked for a writ or order requiring the defendants to account to her for all the moneys and the property, for the appointment of a receiver and that she be declared to be the outright owner of one-half of the property and entitled to the ownership, possession and control of the other one-half by survivorship, subject to proceedings of administration. An amendment to this complaint was filed on February 6, 1953, before demurrer or answer, which eliminated the allegation of a common law marriage in New York on January 1, 1927, leaving the date of the ceremonial marriage as May 30, 1928, at Tiajuana, Lower California, Mexico.

The cause was removed to the federal court because of diversity of citizenship. 28 U.S.C. § 1441. On May 27, 1953, a motion of the appellees to dismiss the action was granted upon the ground "that the action on its face is barred by the statute of limitations", the appellant being given leave to amend.

In her second amended complaint, appellant alleged in the first cause of action that on the death of Robert Sidebotham on December 21, 1951, she and he were tenants in common of certain real and personal property, each being the owner of an undivided one-half of the property, that the administrator has repudiated the co-tenancy and refused to her the right of possession and beneficial enjoyment of her share as well as the right to an accounting as to the rents and profits pertaining to the property. She stated the capacity of Katz as Administrator of the Estate and the defendants Robert Sidebotham and James Sidebotham as claiming the Estate as the heirs at law.

In the second cause of action which incorporated the allegations of the first, she averred that she was, at the times mentioned, the owner and entitled to the possession of an undivided 50% of the assets, property, both real and personal, as well as the fruits and increase thereof, which the decedent possessed at the time of his demise.

Motions made to dismiss this complaint were denied on July 24, 1953.

The plaintiff, on August 6, 1953, *voluntarily* filed a third amended complaint. She incorporated the two causes of action included in her second amended complaint and, by way of a third cause of action, she alleged in substance the following facts:

Since the death of Robert Sidebotham on December 21, 1951, she discovered facts constituting fraud against her from

which she seeks relief, that she was married to the decedent on January 1, 1927, and divorced him on November 14, 1946, in the State of Nevada by "substituted service", that in the year 1938, and, at the time that Robert Sidebotham was sentenced to jail for failure to report a real estate subdividing scheme to the State Real Estate Commission, he borrowed the sum of $100.00 from her and told her that as soon as he made some money he would pay her back. She saw him thereafter until the middle of the year 1940, and he always informed her he was broke and would occasionally give her rent and food money; that he never informed her that he made any money, never paid back the amount borrowed and she verily believed that he continued broke.

At the time of the death of Robert Sidebotham, certain assets were found in his possession under various aliases such as Towner, Thompson, Stone, Smith, Jackson, Hutton, Fenton, Brown, Anderson, Sideboth, and several combinations of the name Sidebotham. This property is the property which passed into the possession of the Administrator Phil C. Katz and his successor W. L. Robison. One of the reasons and purposes which he had in hiding his assets was to prevent appellant in sharing in acquests and gains during her marriage to him and cheat her of her interest in it.

After 1941, he refused to cohabit with her and remained away from her. She did not know of his whereabouts and, in November, 1946, she secured a divorce from him in the State of Nevada on "substituted service".

When questioned by her attorney whether there was any community property, she answered that she did not know. Her attorney unbeknownst to her framed a formal pleading wherein it was stated that there "was no community property". She did not read it and at the hearing of the action wherein a divorce was granted, she did not testify concerning the existence or non-existence of property of the marriage.

The complaint contained the following additional allegations, which are reproduced in their entirety:

"VII

"That said Court did not dispose of the property rights of the parties, nor did it make an order concerning property, and there was no evidence submitted to the Court concerning the same, but the Court found nevertheless that the allegations of the complaint were true and sustained by the evidence. That the finding aforesaid was arbitrary and capricious, and the Court lacked the power and jurisdiction accordingly, to make the same, since there was no evidence submitted on the subject whatsoever.

"VIII

"That plaintiff seeks relief from her mistake and the estoppel which would otherwise apply, but for said mistake, in that an adjudication that there was no community property, under the facts hereinabove set forth, would result in great and irreparable damage and be contrary to all principles of justice that the presumption of law to the effect that Robert Sidebotham admitted all the facts which were pleaded in the Nevada Judgment, by reason of lack of personal service upon him, is a fiction which this Court of Equity, ought weigh against the misconduct of said Robert Sidebotham, in having actively concealed assets and property as hereinabove specified, which under the law, plaintiff had an equal and vested interest with him. That plaintiff first discovered that she had signed the formal pleading containing the sentence that there was no community property, referred to in paragraph VI hereinabove, after the institution of this case at bar, when her attorney Manuel Ruiz, Jr., informed her of the same, on July 13, 1953, said attorney having been on the same day so advised by the attorneys for the defendants."

In this complaint, she sought *only half of the property*, and same general equitable relief asked in the previous complaints, and, in addition, that she be relieved of any estoppel or mistake proxi-

mately resulting from the fraudulent conduct of concealment of Robert Sidebotham concerning her property rights.

The appellees filed motions to dismiss, in which they attacked the sufficiency of the entire complaint upon the ground that it failed to state facts sufficient to constitute a claim or cause of action, Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C., and that the actions were barred by Sections 337, 338 and 343 of the California Code of Civil Procedure, and that it affirmatively appears that all the causes of actions are also barred by laches.[1]

The court granted the motions to dismiss on November 5, 1953, and an order and decree was entered on that day dismissing the action "without leave to amend."

■■ The appeal is from the order and decree. The basic contention is that the court erred in dismissing the complaint for failure to state a claim without further leave to amend. The appellant takes the view that the motion to dismiss the second amended complaint having been denied, the court should not have invalidated its action because of the additional allegations contained in the third cause of action.

The answer to this contention is that on filing a third amended complaint which carried over the causes of action of the second amended complaint, the appellees were free to challenge the entire new complaint.

The Federal Rules of Civil Procedure enjoin a liberal policy as to amendments when "justice so requires." Rule 15(a), Federal Rules of Civil Procedure. The rules also specifically provide that when, by amendment, a new claim is added which arose out of the conduct, transaction or occurrence pleaded in the original pleading "the amendment relates back to the date of the original pleading." Rule 15(c). For this reason the court is not only permitted to go back to the original pleading in order to determine the nature of the new claim, but is required to do so. At times, such action may determine whether the newly asserted claim or cause of action is or is not barred by limitations. Hammond-Knowlton v. United States, 2 Cir., 1941, 121 F.2d 192, 200–203; Michelsen v. Penney, 2 Cir., 1943, 135 F.2d 409, 416; Barthel v. Stamm, 5 Cir., 1944, 145 F.2d 487, 491. So the trial court was free to re-examine its ruling on the causes of action in the prior complaint with a view of determining whether, in the light of the new cause of action, its previous order was correct.

## I

### The Duty to Investigate

■ The all important question is whether the motions to dismiss should have been granted at all, and, if granted, whether the court was right in entering its order of dismissal without leave to amend. This being an action based on diversity, 28 U.S.C. § 1332, the substantive law of the State governs. The District Court in this case sat as another court of the State. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 109–110, 65 S.Ct. 1464, 89 L.Ed. 2079; Angel v. Bullington, 1947, 330 U.S. 183, 191, 67 S.Ct. 657, 91 L.Ed. 832; Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520; Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 555–556, 69 S.Ct. 1221, 93 L.Ed. 1528.

■ California courts allow full inquiry, into *even* the most formal agree-

---

1. Section 337 of the California Code of Civil Procedure provides for a four year period of limitation for actions upon any contract obligation or liability founded upon an instrument in writing.

   Section 338 of the same code provides a three year period of limitation for actions for relief on the ground of fraud or mistake. The cause of action in such case is not deemed "to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

   Section 343 of the same code is the *omnibus* section which provides for four year limitation for actions *not otherwise provided for.*

ments between husband and wife, when there is a claim of concealment or misapprehension of the wife as to the nature of her rights. Simmons v. Briggs, 1924, 69 Cal.App. 447, 464, 231 P. 604; Locke-Paddon v. Locke-Paddon, 1924, 194 Cal. 73, 79, 227 P. 715; Lorraine v. Lorraine, 1935, 8 Cal.App.2d 687, 49 P.2d 48; Matassa v. Matassa, 1948, 87 Cal.App.2d 206, 214–215, 196 P.2d 599; Estate of Stuart, 1950, 97 Cal.App.2d 218, 224–225, 217 P.2d 723.

■ One who seeks to rely upon concealment of facts to overcome the statute of limitations must allege when the fraud was discovered, the circumstances of discovery and show that he is not blamable for failure to discover. Wood v. Carpenter, 1880, 101 U.S. 135, 141, 25 L.Ed. 807; Lady Washington Consol. Co. v. Wood, 1896, 113 Cal. 482, 486–487, 45 P. 809; Estate of Cover, 1922, 188 Cal. 133, 143–144, 204 P. 583; Simmons v. Briggs, 1924, 69 Cal.App. 447, 231 P. 604; Original Mining & Milling Co. v. Casad, 1930, 210 Cal. 71, 290 P. 456. However, less distinct allegations are necessary in order to charge fraud arising out of the confidential relationship of husband and wife. This because the duty to inquire is not applied with strictness to that relationship. Rottman v. Rottman, 1921, 55 Cal.App. 624, 632, 204 P. 46. This rule is applied to other confidential relations. Rutherford v. Rideout Bank, 1938, 11 Cal.2d 479, 486, 80 P.2d 978, 117 A.L.R. 383; Knapp v. Knapp, 1940, 15 Cal.2d 237, 242, 100 P.2d 759; Sime v. Malouf, 1950, 95 Cal.App.2d 82, 97, 212 P.2d 946, 213 P.2d 788.[2] Here the plaintiff was not put on inquiry by anything she knew of the deceased's wealth, since there were no indications that he had any, so successful had his concealment been.

■ Because of the fiduciary nature of the relation between husband and wife, the duty to inquire is not as a rule applied strictly so as to bar assertion of her rights. The reason is stated in a well-known case:

"As the manager of the community property the husband occupies

2. A leading case on the subject is Hobart v. Hobart Estate Co., 1945, 26 Cal.2d 412, 159 P.2d 958, 972, in which the Court said:

"It is not in every case, however, that a person is barred after three years by failure to pursue an available means of discovering possible fraud. The statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. Section 19 of the Civil Code provides: 'Every person who has actual notice of circumstances *sufficient to put a prudent man upon inquiry* as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.' (Italics added.) Under this section it was held in Tarke v. Bingham, 123 Cal. 163, 55 P. 759, that the plaintiff was not barred by subdivision 4 of section 338 of the Code of Civil Procedure, since nothing had occurred 'to excite his suspicion, or to put him upon inquiry,' 123 Cal. at page 166, 55 P. at page 760. The court said: 'Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances, "a prudent man" would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. *The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission.*' (Italics added.) * * *

"The reason for the rule is well stated in Victor Oil Co. v. Drum, supra, 184 Cal. 226 at page 241, 193 P. at page 249: 'The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part.' It follows that plaintiff is not barred because the means of discovery were available at an earlier date provided he has shown that he was not put on inquiry by any circumstances known to him or his agents at any time prior to the commencement of the three-year period ending June, 1941."

a position of trust (Civ.Code secs. 172–173, 158), *which is not terminated as to assets remaining in his hands when the spouses separate.* It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement. The concealment of community property assets by the husband from the wife in connection with such an agreement is therefore a breach of a fiduciary duty of the husband that deprives the wife of an opportunity to protect her rights in the concealed assets and thus warrants equitable relief from a judgment approving such agreement. When community property is entrusted to the wife, she likewise occupies a position of trust. It has therefore been held that a husband may obtain equitable relief from a divorce decree incorporating a property settlement agreement obtained by the fraud of the wife in concealing community assets entrusted to her control. Boullester v. Superior Court, 137 Cal.App. 193, 195, 30 P.2d 59. It is immaterial whether the husband or the wife has submitted the property settlement agreement to the court for approval; the fraud of one spouse in concealing the assets, if not discovered by the other, precludes the latter from protecting his or her rights as to the concealed assets in the divorce proceeding." Jorgensen v. Jorgensen, 1948, 32 Cal.2d 13, 21, 193 P.2d 728, 733.

■ All we have in this case is a statement in a pleading that there was no community property. Such admission has no binding effect whatsoever unless the pleading was *personally* served on the opposite spouse. When there is personal, not substituted, service, it is assumed by the court that the allegation *induced* nonappearance, and the finding that there is no community property is considered a contract. Brown v. Brown, 1915, 170 Cal. 1, 147 P. 1168.

Both the District Courts of Appeal and the Supreme Court of California have so limited the scope of Brown v. Brown, supra, upon which the trial court seems to have based its decision, to cases in which there was no personal service. In Lorraine v. Lorraine, 1935, 8 Cal.App.2d 687, 697, 48 P.2d 48, a case in which it was sought to bind the wife by a Texas decree obtained by publication, the court declined to recognize its binding effect because (1) it had been obtained by publication of summons; (2) there was no actual notice to the wife of pendency of the action; and (3) fraud was not in issue in the prior case.

In a later case, Estate of Williams, 1950, 36 Cal.2d 289, 223 P.2d 248, 22 A. L.R.2d 716, the Supreme Court refused to apply the ruling in Brown v. Brown, supra, to cases in which there *was no personal* service. Mr. Justice Edmonds, after analyzing the Brown case, the prior cases on which it was based and the subsequent cases in which it has been applied, summed up the state of the law in this manner:

"To summarize the holdings of these cases, a defendant may be estopped by a default judgment entered upon a complaint for divorce alleging facts as to property rights when he has been personally served with summons or has actual knowledge of the existence of the litigation." 36 Cal.2d at page 297, 223 P. 2d at page 254.

One of the cases which Judge Edmonds distinguished is Stone v. Stone, 1922, 58 Cal.App. 415, 208 P. 993, which appellees cite in their brief after oral argument. There, too, as appears from the opinion, the plaintiff "was not served personally * * * but that service was made by publication". And the case correctly limits Brown v. Brown, supra, to cases where there is default after "personal service". 58 Cal.App. at page 416, 208 P. at page 994.

■ The fact that the appellant herself filed the complaint which contained the inadvertent allegation does not mili-

tate against the application of the rule here, absent a showing of prejudice. Especially when it is alleged in the third amended complaint that the appellant did not know that the allegation was in her complaint and that she was not questioned at the trial about any community property, and the decree made no adjudication of property rights. It merely found the allegations of the complaint true. The appellant should have been allowed to allege and prove, in greater detail, if necessary, the circumstances under which the mistake of her attorney occurred. (See, Hallett v. Slaughter, 1943, 22 Cal.2nd 552, 556–557, 140 P.2nd 3)

This court has held that although a ruling on a motion to dismiss is good as to a particular complaint, where it is shown that other facts exist, which, if alleged, would cure the defects, leave to amend should be granted. Tipton v. Bearl Sprott Co., 9 Cir., 1949, 175 F.2d 432. In this connection, Topping v. Fry, 7 Cir., 1945, 147 F.2d 715, 718, is very interesting because it holds that laches are matters of defense, and also that a dismissal without leave should not be granted where there is *possibility* of a good complaint being filed:

"We think plaintiff should have been given an opportunity to clarify his complaint. The very deficiencies of the pleading seem to furnish all the more reason why it should not have been dismissed on defendant's motions without leave to amend. From the welter of immaterial facts stated in the complaint here involved we think it is possible to spell out a cause of action based on allegations of a contract, performance by plaintiff, and failure to perform on the part of at least defend-

ant Fry, and possibly the Company. See Kraus v. General Motors Corporation, D.C., 27 F.Supp. 537. Under the liberalized procedure provided for by the new rules, we think it is error to dismiss a complaint with prejudice if it appears that any relief could be granted on the facts stated. See Cyclopedia of Federal Procedure (2d Ed.) Vol. 5, § 1601. As stated in Moore's Federal Practice, Vol. 1, § 8.01, 'Litigation is not an art in writing nice pleadings. It can and should seldom be settled on its merits at the pleading stage * * *.' "[3]

And this course should be followed although "no request to amend the pleading was made to the district court." Downey v. Palmer, 2 Cir., 1940, 114 F. 2d 116, 117.

## II

### The Liberal Rules for Pleading Claims

Rule 8 restricts pleading to a short and plain statement of (1) the grounds for the court's jurisdiction, (2) a similar statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief for which he deems himself entitled. And the courts have applied these rules generously. See, for instance: Leimer v. State Mutual Life Assur. Co., 8 Cir., 1940, 108 F.2d 302 (claim to portion of proceeds of life insurance policy); United States v. Sinclair Refining Co., 10 Cir., 1942, 126 F.2d 827, 830–831 (recovery of damages for fraud from agent of Indians); Machado v. McGrath, 1951, 89 U.S.App.D.C. 70, 193 F.2d 706 (action to declare plaintiff admissible to permanent residence and citizenship in the United States). The reason behind these rulings is well summed up in Lei-

3. To the same effect is Cool v. International Shoe Co., 8 Cir., 1944, 142 F.2d 318, where the court held that it was error to dismiss the complaint with prejudice although there had been three complaints. See also, Levenson v. B. & M. Furniture Co., 2 Cir., 1941, 120 F.2d 1009 and Hummel v. Wells Petroleum Co., 7 Cir.,

1940, 111 F.2d 883, 886, both cases which lay down broad rules for sustaining claims for fraud. The latter case is cited with approval by this court in Johnson v. Gardner, 9 Cir., 1949, 179 F.2d 114, 117.

mer v. State Mutual Assur. Co., supra, 108 F.2d at page 306:

"In view of the means which the Rules of Civil Procedure afford a defendant to obtain a speedy disposition of a claim which is without foundation or substance, by either securing a more definite statement or a bill of particulars under Rule 12(e) and thereafter applying for judgment on the pleadings under Rule 12(h) (1), or by moving for a summary judgment under Rule 56, we think there is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." [4]

▮▮▮ In the light of these facts, it would seem that the husband's constant plea of poverty induced a confidence in the wife which led her to believe that he was as poor indeed as the proverbial "church mouse". Only after his death was his actual wealth revealed, and, as the property was held under fictitious names, any inquiry *by her would have resulted in failure*. At any rate, a trusting wife is not held to the strict rules of discovery which apply to others. The law applicable to confidential relations is applied in the case of husband and wife with the result that

"in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity and casts upon that party the burden of proving affirmatively its compliance with equitable requisites and of thereby overcoming the presumption." 2 Pomeroy's Equity Jurisprudence, Sec. 956 et seq., as cited in Odell v. Moss, 1900, 130 Cal. 352, 357–358, 62 P. 555.

This is also the rule prescribed by California Civil Code, § 2235.

### III

### Estoppel and Laches

▮▮▮ Of course, there may be estoppel and laches, even in such cases. But these are defensive matters under the Federal Rules of Civil Procedure, Rule 8(c). See Topping v. Fry, 7 Cir., 1945, 147 F.2d 715; Copeland Motor Co. v. General Motors Corp., 5 Cir., 1952, 199 F.2d 566; Callaway v. Hamilton Nat. Bank of Washington, 1952, 90 U.S. App.D.C. 228, 195 F.2d 556, 559–563. This also conforms to the substantive law of California. Unlike the statute of limitations, in which lapse of time alone bars the remedy, bar by reason of laches does not arise unless there appear some circumstances, in addition to mere lapse of time, showing prejudice to some one from long delay. See, Cahill v. Superior Court, 1904, 145 Cal. 42, 46, 78 P. 467; Swart v. Johnson, 1942, 48 Cal.App.2d 829, 833–834, 120 P.2d 699; Field v. Bank of America, 1950, 100 Cal.App.2d 311, 223 P.2d 514.

▮▮▮ California courts have applied the rule with great liberality in actions between husband and wife, because of the presumption of good faith inhering in the relationship. California Civil Code, §§ 158, 2228. Thus in one of the cases just cited,—Field v. Bank of America,

---

4. As this action was instituted in the State courts, all the complaints filed contained a common count. California recognizes common counts. See, Philpott v. Superior Court, 1934, 1 Cal.2d 512, 525, 36 P.2d 635, 95 A.L.R. 990; and see Joseph I. King, The Use of the Common Counts in California, 1941, 14 So.Cal.L.Rev. 288; Weitzenkorn v. Lesser, 1953, 40 Cal.2d 778, 793, 256 P.2d 947. The common count is not subject to demurrer, Auckland v. Conlin, 1928, 203 Cal. 776, 778, 265 P. 946. But if a plaintiff relies on the same facts to plead both a specific and a common count, the facts as pleaded may show the insufficiency of the common count. Sutton v. Walt Disney Productions, 1953, 118 Cal.App.2d 598, 603, 258 P.2d 519; Hays v. Temple, 1937, 23 Cal.App.2d 690, 695, 73 P.2d 1248; Weitzenkorn v. Lesser, supra, 40 Cal.2d at page 793, 256 P.2d 947.

A common count satisfies the minimal requirements of Rule 8(a) of Federal Rules of Civil Procedure, 28 U.S.C.

supra,—the court held that it was insufficient to charge a widow with laches in failing to bring action for eighteen years to set aside a declaration of trust, in which she had joined, where it appeared that she was not acquainted with the English language at the time of the testator's death, that she relied entirely on the husband's judgment in business affairs, that he never explained the legal effect of her consent to the declaration and that she had no independent advice.

Ordinarily, mistake as to one's legal rights is not an excuse for failure to act. But in all these cases the ignorance of a wife as to her rights was held excusable. There is nothing in the third amended complaint from which the court can infer prejudice. Indeed, the nature of the estate, consisting of real estate, bonds and the like, is such that it could be well said, as the court did in the Field case, that the defendants "instead of being prejudiced by appellant's inactivity, [were] benefited thereby", 100 Cal.App.2d at page 314, 223 P.2d at page 516, because of the fees which have accrued to the estate since the husband's death and the absolute control he had prior to his death. See Field v. Bank of America, supra.

At most, this is defensive matter, the truth of which only a full trial could determine.

The statement in the Nevada complaint, inserted by her attorney without her knowledge, that there was no community property, as to which she asserts under oath no testimony was given at her hearing, should not be used as a shield for the husband's perfidy. Parties to a divorce action may submit to the court the simple issue of their right to divorce without reference to their property. Coats v. Coats, 1911, 160 Cal. 671, 679, 118 P. 441, 36 L.R.A.,N.S., 844; Lang v. Lang, 1920, 182 Cal. 765, 769, 190 P. 181.

In a divorce complaint to which default is made, the relief cannot exceed the prayer. And where relief is given beyond the scope of that asked for, it is a nullity. Lang v. Lang, supra. The Nevada decree did not contain any adjudication of property rights, some of which, at least, were beyond the jurisdiction of that court, as the real property was located in California, which was also the state of matrimonial domicile. So there can be no question of estoppel by judgment. At most, the finding of the court as to the allegation is an admission and it, having been inadvertently made, not being based on any facts presented to the court and being, in fact, contrary to the facts, cannot deprive the plaintiff, a deserted wife, of the property which, by the law of California, is hers and which the fraud and deceit of a husband concealed from her. Apposite are the following words from Lang v. Lang, 1920, 182 Cal. 765, 768, 190 P. 181, 182:

> "Accordingly, it has been held that a finding made by a court of a fact upon which there is no issue in the case before it, and which does not enter into or form the basis of the judgment rendered in the action is not admissible in another action between the same parties, either as an admission or by way of estoppel. Bank of Visalia v. Smith, 146 Cal. 398, 81 P. 542. As long as matters are not tendered as issues in the action they are not affected by it. Brown v. Brown, supra."

While in the case just referred to there was no allegation as to community property, the language is applicable here. For it is the contention of the appellant that the statement as to the absence of community property was inadvertently inserted and that no testimony was given as to it, and that the judgment makes no *adjudication of property rights.*[5] So the finding of the Nevada

---

5. Apposite also is the following from another leading case:
   "A finding made by a court of a fact upon which there is no issue in the case before it, and which does not enter into or form the basis of the judgment rendered in the action, is not admissible in another action between the same par-

court, not carried over into the judgment, relating as it does to a fact as to which there was no testimony before the court, was outside the power of the court to make and is not binding as an admission.

## IV

### Estoppel In Pais

The conclusion that the appellant is not barred from asserting a claim by anything appearing on the face of the third amended complaint is warranted even if the problem of estoppel in pais be considered. As stated before, estoppel is defensive matter under the rules. Federal Rules of Civil Procedure, Rule 8(c). This is also the California and general rule. Holzer v. Read, 1932, 216 Cal. 119, 124, 13 P.2d 697, 699; Mitchell v. Cheney Slough Irr. Co., 1943, 57 Cal. App.2d 138, 134 P.2d 34, 38; Phoenix Mutual Life Ins. Co. v. Birkelund, 1946, 29 Cal.2d 352, 175 P.2d 5, 11; Reed v. Norman, 1953, 41 Cal.2d 17, 256 P.2d 930, 932. See also, Wilk v. Vencill, 1947, 30 Cal.2d 104, 107, 180 P.2d 351; Klein v. Farmer, 1948, 85 Cal.App.2d 545, 552, 194 P.2d 106; and 19 Am.Jur., Estoppel, Sec. 179.

If facts constituting estoppel affirmatively appear on the face of a complaint, estoppel may be urged by motion to dismiss. See, Latta v. Western Inv. Co., 9 Cir., 1949, 173 F.2d 99, 102;

Suckow Borax Mines Consol. v. Borax Consolidated, 9 Cir., 1950, 185 F.2d 196. But this rarely happens because under the law of estoppel of California which governs this case, estoppel implies: (1) acts which amount to a representation or concealment of material facts made with knowledge; (2) to a person ignorant of the truth; (3) with intent that they be acted upon; and (4) reliance upon such conduct by the person claiming estoppel to his prejudice. Wood v. Blaney, 1895, 107 Cal. 291, 40 P. 428; Holzer v. Read, supra; Lo Bue v. Porrazzo, 1941, 48 Cal. App.2d 82, 119 P.2d 346, 348; Benner v. Industrial Accident Commission, 1945, 26 Cal.2d 346, 159 P.2d 24, 26; Grasslands Water Ass'n, Inc., v. Lucky Leven Land & Cattle Co., 1952, 112 Cal.App.2d 776, 247 P.2d 380, 382; In re Scott's Estate, 1949, 90 Cal.App.2d 21, 202 P.2d 357, 359; Industrial Indemnity Co. v. Industrial Accident Commission, 1953, 115 Cal. App.2d 684, 252 P.2d 649, 652.

When the representations relate to title to real property these cases also teach that ignorance is the basis of reliance and that, where the person pleading estoppel had knowledge of the facts, *there is no reliance.* No deliberate fraud is necessary to give rise to estoppel. Benner v. Industrial Accident Commission, supra; Industrial Indemnity Co. v. Industrial Accident Commission, su-

ties as evidence of that fact, either as an admission or by way of estoppel. House v. Lockwood, 137 N.Y. 259, 33 N.E. 595; Black on Judgments, § 619; Freeman on Judgments, § 251. It is the judgment, and not the preliminary determination of the court or jury, which creates the estoppel. Only that which is the matter directly adjudged, or which appears upon the face of the judgment to have been so adjudged, is conclusive between the parties. Code Civ.Proc. §§ 1908, 1911. Such finding outside of any issue in the case is only a declaration made by the judge who tried the former action of his opinion, formed upon the evidence that he had heard (Lillis v. Emigrant Ditch Co., 95 Cal. 553, 30 P. 1108), and has no greater dignity as evidence than hearsay.

"There was, moreover, *no evidence be-*

*fore the court authorizing it to hold that the shares of stock in the corporation were appurtenant to the Curtis Ranch.* The record does not show the character of the corporation Wutchumna Water Company, nor of the purposes for which it was incorporated, nor is there any evidence of the terms upon which it acquired the right to make use of the Curtis ditch, or whether there is any relation between it and the Curtis Ranch. Neither was it shown that there is any limitation upon the character of its capital stock, or any restriction upon the power of its stockholders to dispose of the same." Bank of Visalia v. Smith, 1905, 146 Cal. 398, 403, 81 P. 542, 543. See also, Coats v. Coats, 1911, 160 Cal. 671, 679, 118 P. 441; Burtnett v. King, 1949, 33 Cal.2d 805, 809, 205 P.2d 657, 12 A.L.R.2d 333.

pra. However, when dealing with representation as to title,

> "there must be some degree of turpitude in the conduct of a party before a court of equity will stop him from the assertion of his title." Holzer v. Read, supra, 13 P.2d at page 698. See, Mott v. Nardo, 1946, 73 Cal.App.2d 159, 163, 166 P.2d 37.

▮ Facts of this character can only be brought to the attention of the court by other pleadings or by affidavits, as was done in the Suckow case, supra. A bare admission in a pleading, *not transmuted into a judgment,* cannot achieve this result. In the light of these considerations, the contention that the statement in the Nevada complaint that there was no property amounted to estoppel cannot be sustained. The appellant's title arose by reason of the existence of the marital relationship. California law gave her a vested interest in the property acquired by the community. California Civil Code, §§ 161a, 172, 172a. This continued during the entire marital relation, whether she and her husband lived together or apart,—unless they made an agreement changing the character of the community property. California Civil Code, § 158.

▮ The husband, during coverture, or even after the dissolution of the marriage, if the decree did not dispose of the property, was entitled to the possession and management of the property. California Civil Code, §§ 164, 172, 172a. The wife's statement in the complaint in the Nevada action, as one of the members of this panel said at the oral argument, may have been a ground of *elation* for the husband rather than *reliance.* He knew the amount of his accumulations, which he had concealed successfully, and that the statement could not be true. How then could his acceptance of this statement in her Nevada complaint prejudice him? There was ignorance, not on his part, *but on the wife's part.*

Under California law spouses may agree to a mutual separation. California Civil Code, § 159. They may also change their relationship to their property, but this must be done by agreement which would have that effect. California Civil Code, § 158. Contracts of this type are also subject to the rules "which control the actions of persons occupying the confidential relations with each other, as defined by the title on trusts". California Civil Code, § 158. Whether, in fact, the deceased and his heirs relied upon the statement in the Nevada complaint and were injured by such reliance can be determined only upon a full trial and by specific findings by the trial court. To cut off the rights of the wife in the face of the allegations of the third amended complaint is to go counter to the policy of the law of California, which maintains between husband and wife the high ideals of fidelity of trustees. California Civil Code, § 2228.

The classic words of Chief Judge Cardozo come to mind:

> "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate." Meinhard v. Salmon, 1928, 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1.

This standard should be applied with greater rigidity to the most intimate of confidential relations—that of husband and wife, which is the firm foundation upon which family life and our society itself rests.

### Conclusion

▮ "A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show." Balti-More S.S. Co. v. Phillips, 1927, 274 U.S. 316, 321, 47 S. Ct. 600, 602, 71 L.Ed. 1069. See, American Fire & Gas Co. v. Finn, 1951, 341 U.S. 6, 15, 71 S.Ct. 534, 95 L.Ed. 702.

■ Under the federal rules, a complaint must show that the plaintiff "is entitled to relief". Federal Rules of Civil Procedure, Rule 8(a). To be entitled to relief in a court of law, the plaintiff must plead a legal right and its violation,—which is what has always been denominated as a "cause of action". Patten v. Dennis, 9 Cir., 1943, 134 F.2d 137, 138; Pierce v. Wagner, 9 Cir., 1943, 134 F.2d 958, 960; Miller v. National City Bank, 2 Cir., 1948, 166 F.2d 723, 727; Lane Bryant, Inc., v. Maternity Lane, Limited, 9 Cir., 1949, 173 F.2d 559, 564–565; Machado v. McGrath, 1951, 89 U.S.App.D.C. 70, 193 F.2d 706, 708–709; Schaefer v. Macri, 9 Cir., 1952, 196 F.2d 162; Knox v. First Security Bank, 10 Cir., 1952, 196 F.2d 112, 117–118; Gold Seal Co. v. Weeks, 1954, 93 U.S.App.D.C. 249, 209 F.2d 802, 807–808.

■ The appellant, in her third amended complaint, has pleaded facts showing a violation of her rights to property claimed and held by the appellees. Her allegations deserve the liberal interpretation enjoined by Rule 1 of the Federal Rules of Civil Procedure. And she is entitled to the most favorable inferences, even if contrary ones are also possible. Callaway v. Hamilton Nat. Bank of Washington, 1952, 90 U.S.App.D.C. 228, 195 F.2d 556, 559. When these allegations are so considered, it is evident that the appellant was entitled, not necessarily to the relief she seeks, but *to some relief*.

■ To summarize: The fiduciary relationship existing between the husband and wife did not terminate upon the dissolution of the marriage because the Nevada court did not determine the property rights of the spouses and the husband continued to hold and manage the property for the benefit of the community.

■ Granted that a court, not having jurisdiction over property, may order one or the other of the spouses to execute deeds to property beyond its jurisdiction, —Tomaier v. Tomaier, 1944, 23 Cal.2d 754, 146 P.2d 905, 908,—the fact is that in this case the Nevada court *was not asked to*, and *did not do so*.[6]

■ The law does not penalize the wife with the loss of her vested interest in the property of the community because of her trusting reliance upon her husband's assertions that there is no community property. Even in ordinary cases, the duty to inquire arises only when the facts are such that pursuit of inquiry would have led to discovery. How could the wife have broken through the almost impregnable shield of aliases and established ownership by the deceased under those names? She committed no act which deprived her of the right to assert her ownership to her half of the community property upon the death of the husband. The husband's deception, which continued up to the time of his death, was a concealment of *her right of action*, against which the courts of California grant relief, dating from dis-

6. There is nothing in Watson v. Watson, 1952, 39 Cal.2d 305, 246 P.2d 19, which commands a contrary conclusion. In that case, the husband, who had secured a Nevada divorce and remarried, sought to attack it in a suit against the second wife for malicious prosecution. Sustaining the trial court which had dismissed the action, the Supreme Court of California held that the Nevada decree was "res judicata as between a party thereto and *a stranger to that action to the extent that it established the future status of the parties to the divorce*." 39 Cal. 2d at page 307, 246 P.2d at page 20 (Emphasis added)

Here, there is no estoppel by judgment. The Nevada decree *did not* determine the property rights of the parties, and the appellant is challenging the erroneous statement in her Nevada complaint *as to* the existence of community property, on which the executor of her husband's estate and his heirs base a claim of estoppel by act or admission. Failure to read an instrument before executing it may be explained under California law, even when there is no fiduciary relationship between the parties: See, California Trust Co. v. Cohn, 1932, 214 Cal. 619, 7 P.2d 297; Id., 9 Cal.App.2d 33, 48 P.2d 744; Roller v. California Pacific Title Ins. Co., 1949, 92 Cal.App. 2d 149, 154, 206 P.2d 694; Kantlehner v. Bisceglia, 1951, 102 Cal.App.2d 1, 3–4; 226 P.2d 636.

covery, even in cases not involving fiduciary relations. See, Kimball v. Pacific Gas & Electric Co., 1934, 220 Cal. 203, 30 P.2d 39; Pashley v. Pacific Electric Ry. Co., 1944, 25 Cal.2d 226, 153 P.2d 325.

Only when death occurred and the administration of the estate disclosed the existence of the property did the wife learn the facts. She acted promptly. And the complaints considered in their entirety, from first to last, do not show the elements or the presence of laches or estoppel.

The preceding discussion also establishes the fact that whether the three year, California Code of Civil Procedure, § 338, or the four year statute of limitations, California Code of Civil Procedure, §§ 337, 343, applies, the appellant has pleaded enough facts to excuse her inaction and to toll the running of either. It follows that the trial court was in error in dismissing the action. Its order and decree is reversed with direction to require the appellees to answer to the third amended complaint or to grant to the appellant leave to file another amended complaint should she so desire.